UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------

THE CITY OF NEW YORK,

                Plaintiff,

           v.                            Civ. Action No. 25-cv-1510 (JHR)

DONALD TRUMP, *et al.*,

                Defendants.

------------------------------------------------------------------------

# PLAINTIFF CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 65

Dated: New York, New York
March 3, 2025

MURIEL GOODE-TRUFANT
Corporation Counsel of
 the City of New York
100 Church Street
New York, New York 10007
(212) 356-1000

*Attorney for Plaintiff*

# **TABLE OF CONTENTS**

Preliminary Statement .................................................................................................... 1

Argument ........................................................................................................................ 2

        A.      Plaintiff Has a Clear and Substantial Likelihood of Success on the Merits ............. 2

        B.      The City Will Suffer Irreparable Harm in the Absence of Injunctive Relief ............ 8

        C.      The Public Interest and the Equities Strongly Favor the City; No Bond Is Required ............................................................................................................. 10

Conclusion .................................................................................................................... 11

Certificate of Compliance with Local Rule ................................................................. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Bello v. Smith*,
   651 F. Supp. 3d 20 (D.D.C. 2022) ............................................................................6

*Bennet v. Spear*,
   520 U.S. 154 (1996) ....................................................................................................7

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) .................................................................................................7, 8

*Catanzaro v. Weiden*,
   188 F.3d 56 (2d Cir. 1999) ..........................................................................................6

*City of Houston v. Dep't of Hous. & Urban Dev.*,
   24 F.3d 1421 (D.C. Cir. 1994) ....................................................................................9

*Cnty. of Santa Clara v. Trump*,
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ........................................................................6

*Cnty. of Suffolk v. Sebelius*,
   605 F.3d 135 (2d Cir. 2010) ........................................................................................8

*Cnty. of Westchester v. U.S. Dep't of Hous. & Urb. Dev.*,
   802 F.3d 413 (2d Cir. 2015) ........................................................................................8

*Doe v. Trump*,
   Civil No. 25-10135-LTS, 2025 U.S. Dist. LEXIS 27582
   (D. Mass Feb. 13, 2025) ............................................................................................10

*Franklin v. Massachusetts*,
   505 U.S 788 (1992) ...................................................................................................10

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005) ........................................................................................9

*Int'l Controls Corp. v. Vesco*,
   490 F.2d 1334 (2d Cir. 1974) ....................................................................................11

*Jacksonville Port Auth. v. Adams*,
   556 F.2d 52 (D.C. Cir. 1977) ......................................................................................9

*Larson v. Domestic & Foreign Commerce Corp.*,
   337 U.S. 682 (1949) ....................................................................................................8

*Maryland Dep't of Human Res. v. Dep't of Health and Human Servs.*,
   763 F.2d 1441 (1985) ..................................................................................................8

*New York v. Trump*,
   No. 1:25-cv-00039, 2025 U.S. Dist. LEXIS 17593
   (D.R.I. Jan. 31, 2025) ............................................................................................3, 5

*Pacito v. Trump*,
   No. 2:25-cv-255-JNW, 2025 U.S. Dist. LEXIS 36606
   (W.D. Wash. Feb. 28, 2025) ........................................................................................10

*Rochester Pure Waters Dist. v. Envt'l Prot. Agency*,
   960 F.2d 180 (D.C. Cir. 1992) .......................................................................................9

*Temple Univ. v. White*,
   941 F.2d 201 (3d Cir. 1991) ........................................................................................11

**<u>Statutes</u>**

2 C.F.R. § 200.339 ..............................................................................................................1

2 C.F.R. § 200.340 ..............................................................................................................1

2 C.F.R. § 200.341 ..............................................................................................................1

2 C.F.R. § 200.342 ..............................................................................................................1

2 C.F.R. § 200.343 ..............................................................................................................1

5 U.S.C. § 702 ....................................................................................................................8

5 U.S.C. § 706 ....................................................................................................................4

31 C.F.R. § 210.6(f) ............................................................................................................4

**PRELIMINARY STATEMENT**

In the ten days since Plaintiffs filed this motion, the need for a temporary restraining order ("TRO") has come into ever-sharper relief. Newly introduced legislation appears aimed at ending the Shelter and Services Program ("SSP") and rescinding the funds at issue here. But for Defendants' lawless money grab, those funds would remain with the City during the pendency of this litigation and any lawful administrative process. Instead, Defendants took away those funds and put them at risk without notice or legal authority.

Defendants' post hoc, hastily-constructed facade of compliance review cannot conceal their real aim: to prevent any payment to the City and to thereby thwart Congress's purpose for the grants: to assist local governments with the cost of providing shelter and services to migrants that Defendants released into the community. Defendants concede that before clawing back funds, they are "required to follow the process outlined in 2 C.F.R. 200.339-343 which requires notice and an opportunity" for the City to be heard. Defs' Mem. of Law in Opp. ("Op.") at 13. They would nonetheless exempt their money grab from these procedures by styling it as a "withholding" of funds and reframing the payment as an administrative "error" to be corrected as one would cancel a check sent to the wrong recipient. But the funds were not withheld, and there was no error – only Defendants' determination to take back reimbursements and prevent further payments under a program they no longer like, which Defendants lack authority to do. Defendants' professed concerns about alleged crime, "harboring," and compliance with grant conditions are red herrings; they attempt to impose new and retroactive conditions after the very same agency reviewed and determined the payments met the eligibility requirements.

Temporary relief ordering the return of the funds and preventing further mischief is necessary to prevent this case from being mooted by congressional or executive action, imposes

1

no cognizable burden on Defendants, and should be granted.

## ARGUMENT

**A. Plaintiff Has a Clear and Substantial Likelihood of Success on the Merits**

As demonstrated in the City's opening brief, the City is likely to prevail on the merits as to all of its claims. City Mem. of Law ("MOL"), ECF 10, at 11-18. Indeed, Defendants' lawless conduct is the very definition of unreasoned and disordered government action.

Defendants' opposition relies on a fictional account portraying their money grab as "business as usual." That is belied by the facts that demonstrate that nothing Defendants did falls within the normal workings of government. Their abrupt removal of the funds was not a "withholding" or the correction of a payment "error" as they claim, and it was not done for the purpose Defendants claim – to comply with DHS policies and ensure that SSP funds are not used to fund illegal activity. It was done because Defendants do not want funds to be disbursed to reimburse the City for providing shelter and other services to noncitizen migrants. Defendants' arguments on the likelihood of success on the merits fail because they all rest on this fiction.

**Arbitrary and Capricious and Contrary to Law**. Defendants argue that the SSP funds should have been withheld under a January 28, 2025 Memorandum ("Noem Memo"), which pauses any grant disbursements for which "non-profit organizations are eligible" and that "touch in any way on immigration." Rubin Decl. Ex. E, ECF 6-5. The money grab, they disingenuously claim, was merely to correct an "error." Op. at 6-7. These assertions do not survive scrutiny.

The Noem Memo unequivocally seeks to frustrate Congress's intent in authorizing the SSP program by instituting an across-the-board, categorical pause challenging its statutory purpose of providing funds to cover the costs of services provided to certain migrants. Agency action that is designed to thwart the implementation of a program that Congress authorized, by

2

withholding funds that Congress appropriated for the purpose, is contrary to law. The Noem Memo is itself ultimate agency action that is arbitrary and contrary to law.

Furthermore, as the City demonstrated, MOL at 6–7, from the February 4 money grab through today, Defendants have been enjoined from effectuating any pauses or other impediments to disbursement of grant funds unless they are based on the laws and regulations applicable to the grant or terms and conditions of the grant itself. *New York v. Trump*, No. 1:25-cv-00039, 2025 U.S. Dist. LEXIS 17593 (D.R.I. Jan. 31, 2025), ECF 50 at 4-7 (finding likelihood of success on the merits), Rubin Decl. ¶ 10 & Ex. A, ECF 6, 6-1. The Noem Memo does not fit these categories.

Defendants' reliance on the Noem Memo is also inconsistent with positions Defendants have taken in *New York v. Trump*. In *New York v. Trump*, the plaintiff States are seeking to enforce the TRO against defendants, to require them to un-freeze SSP funds, among other FEMA funds. 2d Mot. To Enforce TRO, *New York v. Trump*, No. 1:25-cv-00039 (D.R.I. Feb. 28, 2025), ECF No. 160. Defendants, however, have denied that there is a pause on funding. *See* McCombs Aff. Ex. E, *New York v. Trump*, No. 1:25-cv-00039 (D.R.I. Feb. 28, 2025), ECF No. 160-1 at 32. This appears to directly contradict Defendants' position in this proceeding: that all SSP funding is paused pursuant to the Noem Memo. In relying solely on the Noem Memo as authority for the money grab, Defendants effectively concede that they are not acting pursuant to any grant-specific terms and conditions or any regulations applicable thereto.

These facts alone defeat Defendants' argument that the money grab was simple error correction. However, even standing alone, Defendants strain credulity in asserting that the money grab was akin to sending a check to the wrong address, and then cancelling it. Op. at 18. The grab-back was preceded by a series of public statements from Defendants blasting the City for providing shelter to "illegal immigrants" at "luxury hotels"; calling for SSP money to be "claw[ed]back";

3

criticizing Congress for enacting SSP; and promising "it stops now." Rubin Decl., ECF 6 at ¶¶ 6–8. Afterwards, DHS terminated four FEMA staffers for making "egregious payments for luxury NYC hotels" and Defendant Noem declared victory, stating that she had "clawed back the full FEMA payment" and further that "[m]ark my words: there will not be a single penny spent that goes against the interest and safety of the American people." ECF 6 at ¶¶ 9, 16. Defendants' laid bare that the money grab furthers their opposition to the SSP, and in particular the provision of funds to reimburse the City for shelter and other services provided to noncitizen migrants released by DHS.[1]

**APA Violation and Procedural Due Process Violation**. Defendants posit that the "noncompliance letter" presents legitimate reasons for the money grab and offers reasonable and adequate procedural safeguards to the City in compliance with the APA and the Due Process Clause. But as the City explained in its opening brief, the "noncompliance letter" is pretextual and it offers no real process. MOL at 15–16. The letter implies that the City used SSP money to support criminal activity – based solely and vaguely on media reports that do not describe any unlawful activity by the City – and demands information that is largely in Defendants' hands and apparently unrelated to Defendants' purported concerns about illegal activity.

Defendant FEMA was perfectly aware, from its thorough review of the City's detailed submissions and from two site visits, that the City was using the Roosevelt Hotel, and FEMA

---

[1] Notably, Defendants did not comply with the applicable rules or regulations for a reversal of an Automated Clearing House ("ACH") payment. Under 31 C.F.R. § 210.6(f), which incorporates by reference the National Automated Clearing House Association ("NACHA") 2021 Operating Rules & Guidelines ("NACHA Rules") an "erroneous entry" subject to reversal is (1) an exact duplicate of an earlier ACH payment; (2) a payment not to the intended recipient; (3) an incorrect dollar amount or date; or (4) a payment to a former employee duplicative of a check already delivered to that employee. 31 C.F.R. 210.3(b). An ACH reversal is improper if initiated for any other reason. NACHA Rules 2.9.5. FEMA's reasons for reversal are not within any of the allowable criteria.

approved those reimbursements. That the letter is silent about the site inspections speaks volumes. Furthermore, public statements by Defendants Noem and Hamilton make abundantly clear their firm resolve that SSP funding "stops now." *See supra*; Rubin Decl. ECF 6 ¶¶ 7, 8, 16. The "noncompliance" letter offers only sham process, and therefore does not satisfy the procedural requirements of the APA.

Defendants' money grab was also unquestionably a violation of the City's right to procedural due process under the Due Process Clause of the Fifth Amendment. The City had—and continues to have—a protectible property interest in these federal grant funds that Congress has authorized and that FEMA awarded, approved, and disbursed to the City. *County of Santa Clara v. Trump*, 250 F. Supp.3d 497, 507 (N.D. Cal. 2017). It was deprived of that property without any process at all, let alone adequate process.

Defendants' arguments to the contrary are baseless. Relying on the program-wide pause ordered in the Noem Memo, Defendants argue that the City had no property interest in the SSP funds because they were paid "improperly" and in "error" and therefore the funds were not actually "approved and disbursed." Op. at 18-19; *id*. at 17-18 (arguing that for this reason, Defendants also were not required to follow prescribed procedures under regulations). Of course, the funds were in fact approved and disbursed. Jiha Decl. ¶¶ 19, 20, 39. In any event, as discussed above, Defendants' reliance on the Noem Memo is misplaced. It is arbitrary – and nonsensical – to say that a "pause" (even if legitimate, which this is not) in paying out funds means that the agency is permitted to take back whatever funds were already approved as eligible and paid, and then claim they are merely pausing release of the funds. Their argument that there was no need to follow regulatory requirements is contradicted by their own statements in *New York v. Trump*, where Defendants advised the Court that they were following all applicable notice and other procedural

5

requirements. Rubin Decl Ex. C.

Defendants' further argument that post-deprivation process is adequate here is mistaken, as their own cited authorities make clear. Op. at 20. Post-deprivation process may be sufficient where "there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical," *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999), or where there is a "need to minimize the potential for asset flight." *Bello v. Smith*, 651 F. Supp. 3d 20, 40 (D.D.C. 2022). None of those circumstances are present here, and Defendants do not even claim they are.

**Separation of Powers and Spending Clause**. Contrary to Defendants' arguments (Op. at 22), the money grab violates the separation of powers doctrine. Defendants executed the money grab to frustrate the SSP's Congressionally-authorized purpose—offsetting costs for providing shelter and other services to noncitizens released into the community by DHS—which Defendants lack authority to do. *See* MOL at 16–17. The money grab moreover imposes new post-award conditions that are inconsistent with and negate the grants' purpose, s*ee* MOL at 17–18, such as by "pause[ing]" SSP on grounds that "it touches on immigration" and could go to nonprofits and requiring a post hoc review of SSP ostensibly to determine whether the City, in providing SSP reimbursement-eligible services to migrants released by DHS into the U.S., was "encouraging or inducing" immigration in violation of law (Jiha Decl. ECF 9 Ex. 20). These conditions reflect Defendants' underlying animus to the grant itself in that they consider the grants' stated purpose to be suspect or even the funding of illegal activity. Defendants do not grapple with any of these arguments. Instead, they fall back on their meritless argument that the money grab is a withholding of funds disbursed in error.

**Final Agency Action**. Defendants wrongly argue that there is no "final agency action" to

challenge. But agency action is final if it is "the consummation of the agency's decision making process" and "the action [is] one by which rights or obligations have been determined or from which legal consequences will flow." *Bennet v. Spear*, 520 U.S. 154, 178 (1996) (citations omitted). The money grab easily satisfies both of these requirements. Defendants made public their decision-making process and determination to make the money grab before they took the funds, *see supra* and Rubin Decl. ¶¶ 6–9, and the agency action was completed when the money grab was executed. *See* Hamilton Decl. at ¶ 11. The money grab determined the City's rights and has legal consequences. Defendants took $80 million from the City without any notice or process, in denigration of the City's due process rights. And worse, Defendants are now arguing that as a result of the money grab, the City has no property interest in the funds. *See* Op. at 19.

Defendants' post hoc scramble to add a veneer of legitimacy does not insulate the money grab from judicial review and does not prevent the City from seeking immediate relief. As discussed above, the "noncompliance" letter does not offer a genuine opportunity to contest the money grab because it is pretextual and the outcome pre-determined. Additionally, as discussed further below, there is a strong likelihood that the $80 million in SSP funding will become unavailable during the pendency of the administrative process. Requiring the City to respond to the "noncompliance" letter and participate in pretextual administrative process before the SSP funds are paid back would be futile and would likely defeat the City's remedy. *See J.G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447 (2d Cir. 1987) (to show futility, a plaintiff must demonstrate "adequate remedies are not reasonably available" or "the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process").

**The Tucker Act Does Not Apply.** Defendants seek, without merit, dismissal on jurisdictional grounds, asserting that this dispute is one "for money damages . . . cognizable solely under the Tucker Act." Op. at 14. But "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). Claims for damages, which "provide a victim with monetary compensation for an injury to his person, property, or reputation," are barred by 5 U.S.C. § 702, but this case is not barred because it is "an equitable action for specific relief," which seeks "recovery of specific property *or monies*." *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)). For the same reason, the Court of Claims is not the appropriate venue. *Bowen*, 487 U.S. at 905.

This action seeks equitable relief—the return of "the very thing to which [the City] was entitled"—and is properly decided under the APA. *Id.* at 895 (quoting *Maryland Dep't of Human Res. v. Dep't of Health and Human Servs.*, 763 F.2d 1441, 1446 (1985)). Defendants concede as much by relying on *Cnty. of Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 802 F.3d 413, 430-432 (2d Cir. 2015), under which withholding of appropriated grant funds is an APA violation, not a suit for money damages. Op. at 10; *see also Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 141 (2d Cir. 2010. The Tucker Act offers no basis to dismiss this lawsuit for equitable relief.

**B. The City Will Suffer Irreparable Harm in the Absence of Injunctive Relief**

As previously demonstrated, the City is at significant risk of irreparable harm without a TRO. The appropriated funds may be rescinded, awarded to other recipients, or lapse. Courts have consistently held that such funds need to be preserved before they become unavailable in order to preserve – and not moot – claims such as those asserted here. MOL at 19-21.

The threat of irreparable harm has only intensified since this suit was filed. On February

27, 2025, Senate bill S. 711, entitled "A bill to terminate the Shelter and Services Program of the Federal Emergency Management Agency, and for other purposes," was referred to the Senate Committee on Homeland Security and Government Affairs. S. 771, 119th Cong. (2025) (as reported by S. Comm. On Homeland Security and Governmental Affairs, Feb. 28, 2025). This bill – nicknamed the "*End FEMA Benefits for Illegal Immigrants Act*" by its sponsors[2]—takes direct aim at SSP and Defendants may argue rescinds the funds in dispute, rendering the City's claim moot. *See Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185-186 (D.C. Cir. 1992) (funds rescinded by Congress could not be subject to a permanent injunction).

Thus, the rescission threat is not, as Defendants suggest (Op. at 12), mere "speculation" as to future congressional action. The legislation amplifies the immediate and tangible risk of rescission during this action's pendency if the funds are left in Defendants' possession. Defendants offer no other way to protect against this threat and no support for their suggestion that a TRO would "override Congress's Appropriations Power." Op. at 12. As the City has shown, courts consider it necessary to protect funds at the outset to avoid mootness and that to do otherwise is an abuse of discretion. MOL at 19-21 (citing cases). Defendants' reliance on *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)) is misplaced because that case involved funds of private entities, not federal funds subject to Congressional rescission. Because the funds at issue here were previously appropriated by Congress, and then reimbursed consistent with that appropriation, a TRO reinforces, rather than undermines, Congressional prerogative. Further, Defendants' argument that the funds are protected from deobligation under applicable rules and grant terms and conditions, Op. at 19-20, strains credulity because Defendants have already demonstrated their willingness to bypass those protections.

---

[2] https://www.risch.senate.gov/public/index.cfm/pressreleases?ID=EAC2CB40-4656-43A3-A337-86FD0D9A282B

**C. The Public Interest and the Equities Strongly Favor the City; No Bond Is Required**

The equities strongly favor the City because an injunction serves the public interest by allowing funds that Congress appropriated, and FEMA awarded, approved, and disbursed, to remain with the City. See MOL at 21-22. While the City is acting in the public interest to protect its reimbursement for costs incurred consistent with congressional intent, Defendants are intentionally thwarting that intent. Defendants argue that a TRO would injure them, seemingly because they would not be able to effectuate the Noem Memo's pause on SSP funding and because of the concerns professed in the post hoc Noncompliance Letter. But Defendants have no need for the money grab – normal administrative process provides numerous methods to recover any funds that they actually determine are misspent, *see supra*, and Defendants have not identified any legitimate basis to suspect that funds they disbursed to the City following a thorough review of expenditures reimburse any illegal activity at all.[3]

Regarding a bond, Defendant's ability to recover for any harms incurred during the period the injunction is in place is not at risk. Given the equities and that Defendants have identified no risk of such harm, the Court should exercise its authority to waive the bond requirement or set its amount at zero. *See Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974).

---

[3] Defendants request dismissal of President Donald Trump from this lawsuit, Op. at 26, but this issue should be addressed by motion to dismiss, not here. In any event, the cases relied on by Defendants are inapposite, as they provide only that "Congress cannot act on, and courts cannot examine, the President's actions on subjects within his conclusive and preclusive constitutional authority." *Trump v. U.S.*, 603 U.S. 593, 609 (2024); *Franklin v. Massachusetts, 505* U.S 788, 802 (1992). But Defendants' actions here are not within the exclusive power of the President nor his official duties. In ordering preliminary relief in cases where the President is named, courts retain the President as a party if his conduct is not enjoined by the order. *See Doe v. Trump, Civil No. 25-10135-LTS, 2025 U.S. Dist. LEXIS 27582 \*48 ( D. Mass February 13, 2025) (assuming without deciding that the president may be enjoined, but declining to enjoin his conduct as it was not necessary); see also Pacito v. Trump*, Index No. 2:25-cv-255-JNW, U.S. Dist. LEXIS 36606 * 75 (W. D. Wash. February 28, 2025).

## **CONCLUSION**

For all of the reasons set forth herein and the papers submitted by the City to date, the motion should be granted.

Respectfully submitted,

**MURIEL GOODE-TRUFANT**
Corporation Counsel of
 the City of New York
*Attorney for Plaintiff The City of New York*
100 Church Street
New York, NY 10007
(212) 356-1000


By:     */s/ Joshua Rubin*
            Joshua Rubin
            Doris Bernhardt
            Melanie Ash
            June R. Buch
            Aatif Iqbal
            Gail Rubin
            Elizabeth Slater
            Assistant Corporation Counsel

# **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE**

As required by Local Civil Rule 7.1(c), I certify that the document contains 3,404 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

                                             *s/Doris Bernhardt*
                                             Doris Bernhardt