UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK,

          *Plaintiff,*

    v.

DONALD J. TRUMP, *et al.*,

          *Defendants.*

25 Civ. 1510 (JHR)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

SYED AHMAD (IL Bar 6217343)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Washington, DC 20005
202-307-2092
syed.n.ahmad@usdoj.gov

for Defendants

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 2

I.     Plaintiff's Grant Awards Under the Shelter and Services Program ................................. 2

II.    FEMA's Withholding of $80 Million in Reimbursement Funds...................................... 3

III.   FEMA's Termination of Plaintiff's SSP Grant Awards ................................................... 4

IV.   Procedural History ........................................................................................................... 5

LEGAL STANDARD ................................................................................................................. 6

I.     In General......................................................................................................................... 6

II.    Federal Rule of Civil Procedure 12(b)(1) ....................................................................... 6

III.   Federal Rule for Civil Procedure 12(b)(6)...................................................................... 7

ARGUMENT ............................................................................................................................. 7

I.     The Court Lacks Jurisdiction Under the APA to Compel the Government to Pay
       Money Under a Contract.................................................................................................. 7

II.    Grant Funding Decisions Are Committed to Agency Discretion by Law ....................... 14

III.   FEMA Has Not Taken Final Agency Action to Withhold the Disputed $80 Million ....... 16

IV.   Plaintiff Fails to State a Claim That Defendants Have Acted Contrary to Law,
       Ultra Vires, or in Excess of Statutory Authority ............................................................ 17

V.    Plaintiff's Constitutional Claims Should Be Dismissed .................................................. 22

       A.    Plaintiff's Fifth Amendment Claim Fails (Count 6) ............................................. 22

       B.    Plaintiff's Separation of Powers and Spending Clause Claims Fail Too ............. 25

CONCLUSION........................................................................................................................... 27

# TABLE OF AUTHORITIES

**CASES**

*Air Courier Conf. of Am. v. Am. Postal Workers Union,*
  498 U.S. 517 (1991)........................................................................................... 17, 18

*Air Espana v. Brien,*
  165 F.3d 148 (2d Cir. 1999) ................................................................................ 16

*Albrecht v. Comm. on Emp. Benefits,*
  357 F.3d 62 (D.C. Cir. 2004)................................................................................11

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
  526 U.S. 40 (1999)............................................................................................... 23

*Amica Ctr. for Immigrant Rts. v. Dep't of Just.,*
  No. 25-cv-298 (RDM), 2025 WL 1852762 (D.D.C. July 6, 2025).......................... 15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................... 7

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
  968 F.2d 196 (2d Cir. 1992) ............................................................................ 6, 7

*Atterbury v. U.S. Marshals Serv.,*
  805 F.3d 398 (2d Cir. 2015) ................................................................................ 10

*B.K. Instrument, Inc. v. United States,*
  715 F.2d 713 (2d Cir. 1983) .................................................................................. 9

*Bd. of Regents of State Colls. v. Roth,*
  408 U.S. 564 (1972).............................................................................................. 24

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................... 7

*Bennett v. Spear,*
  520 U.S. 154 (1997)............................................................................................. 16

*Block v. Cmty. Nutrition Inst.,*
  467 U.S. 340 (1984).......................................................................................... 17, 19

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,*
  369 F.3d 212 (2d Cir. 2004) .................................................................................. 6

*California v. U.S. Dep't of Education,*
  769 F. Supp. 3d 72 (D. Mass. 2025) ...................................................................... 12

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................................. 6

*City of N.Y. v. Beretta U.S.A. Corp.*,
   401 F. Supp. 2d 244 (E.D.N.Y. 2005), *aff'd in part and rev'd in part*,
   524 F.3d 384 (2d Cir. 2008) ........................................................... 22, 23

*City of Sault Ste. Marie v. Andrews*,
   532 F. Supp. 157 (D.D.C. 1980) ......................................................... 22

*Clarke v. Sec. Indus. Ass'n*,
   479 U.S. 388 (1987) ......................................................................... 18

*Cohen v. Postal Holdings, LLC*,
   873 F.3d 394 (2d Cir. 2017) ............................................................... 10

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) ......................................................................... 16

*Dabney v. Reagan*,
   542 F. Supp. 756 (S.D.N.Y. 1982) ....................................................... 18

*Dalton v. Specter*,
   511 U.S. 462 (1994) ......................................................................... 25

*Department of Education v. California*,
   604 U.S. --, 145 S. Ct. 966 (2025) ................................................ *passim*

*Dickerson v. Mut. of Am.*,
   703 F. Supp. 2d 283 (S.D.N.Y. 2010) .................................................... 6

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ................................................................ 6

*Dixon v. von Blanckensee*,
   994 F.3d 95 (2d Cir. 2021) ................................................................. 6

*El Paso Cnty. Water Improvement Dist. No. 1 v. Int'l Boundary & Water Comm'n*,
   701 F. Supp. 121 (W.D. Tex.1988) ....................................................... 22

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ......................................................................... 26

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ......................................................................... 14

*Gallop v. Cheney*,
   642 F.3d 364 (2d Cir. 2011) ................................................................ 7

iii

*Gen. Land Off. of State of Tex. v. Biden*,
   722 F. Supp. 3d 710 (S.D. Tex. 2024) .................................................................... 18, 19

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ............................................................................................... 8, 10, 12

*Hadwan v. U.S. Dep't of State*,
   139 F.4th 209 (2d Cir. 2025) ........................................................................................ 25

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ...................................................................................................... 15

*Hettinga v. United States*,
   677 F.3d 471 (D.C. Cir. 2012) ...................................................................................... 23

*In re Newport News Shipbuilding & Dry Dock Co.*,
   55 Comp. Gen. 812 (1976) ........................................................................................... 15

*Ingersoll-Rand Co. v. United States*,
   780 F.2d 74 (D.C. Cir. 1985) ........................................................................................ 11

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021) ........................................................................................... 7

*Kielczynski v. U.S. CIA*,
   128 F. Supp. 2d 151 (E.D.N.Y. 2001) ......................................................................... 23

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ........................................................................................................ 7

*Lance v. Coffman*,
   549 U.S. 437 (2007) ...................................................................................................... 26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ...................................................................................................... 21

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ........................................................................................... 14, 15, 16

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ...................................................................................................... 18

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ........................................................................................... 6

*Martz v. Inc. Vill. of Valley Stream*,
   22 F.3d 26 (2d Cir. 1994) ............................................................................................. 24

iv

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*,
   No. 25-cv-30041, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) .............................................. 14

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ....................................................................................................................... 8

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ..................................................................................................................... 25

*McGee vs. Mathis*,
   71 U.S. 143 (1866) ......................................................................................................................... 9

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) .................................................................................................. 9, 10

*Metro. Transp. Auth. v. Duffy*,
   -- F. Supp. 3d --, 2025 U.S. Dist. LEXIS 101448 (S.D.N.Y. May 28, 2025) ........................... 13

*Miccosukee Tribe of Indians of Fla. v. United States*,
   No. 08-23523-CIV, 2009 WL 10668917 (S.D. Fla. Sept. 30, 2009) ......................................... 20

*Nat'l Urb. League v. Trump*,
   -- F. Supp. 3d --, 2025 WL 1275613 (D.D.C. May 2, 2025) ..................................................... 23

*National Job Corps Ass'n v. Dep't of Labor*,
   -- F. Supp. 3d --, 2025 U.S. Dist. LEXIS 121052 (S.D.N.Y. June 25, 2025) ........................... 13

*New Vision Photography Program, Inc. v. District of Columbia*,
   54 F. Supp. 3d 12 (D.D.C. 2014) ......................................................................................... 23, 24

*New York v. U.S. Dep't of Just.*,
   951 F.3d 84 (2d Cir. 2020) ................................................................................................... 26, 27

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981) .................................................................................................................. 9, 26

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan
   Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ......................................................................................................... 7

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) ...................................................................................................... 9

*Presidential Gardens Assocs. v. United States ex. rel. Sec'y of Hous. & Urb. Dev.*,
   175 F.3d 132 (2d Cir. 1999) ................................................................................................... 8, 10

*Pub. Citizen v. Stockman*,
   528 F. Supp. 824 (D.D.C. 1981) ........................................................................................... 18, 19

*Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*,
    421 F.3d 1 (1st Cir. 2005) ............................................................................. 24

*Rich v. Fox News Network, LLC*,
    939 F.3d 112 (2d Cir. 2019) ............................................................................ 7

*Rocky Ford Hous. Auth. v. U.S. Dep't of Agric.*,
    427 F. Supp. 118 (D.D.C. 1977) .................................................................... 18

*Rogers v. United States*,
    14 Cl. Ct. 39 (1987), *aff'd*, 861 F.2d 729 (Fed. Cir. 1988) ........................... 18

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ............................................................................. 16

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008) ............................................................................. 17

*Solutions in Hometown Connections v. Noem*,
    No. 25-cv-885, 2025 WL 1103253 (D. Md. Apr. 14, 2025) ......................... 13

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) ....................................................................................... 22

*South Dakota v. Dole*,
    483 U.S. 203 (1987) ....................................................................................... 26

*Spectrum Leasing Corp. v. United States*,
    764 F.2d 891 (D.C. Cir. 1985) ....................................................................... 11

*Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*,
    480 F.3d 1116 (Fed Cir. 2007) ...................................................................... 24

*Sustainability Inst. v. Trump*,
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ............................. 13

*Tennessee v. Becerra*,
    131 F.4th 350 (6th Cir. 2025) ........................................................................ 27

*Thompson v. N. Am. Stainless, LP*,
    562 U.S. 170 (2011) ....................................................................................... 18

*Trump v. Sierra Club*,
    588 U.S. --, 140 S. Ct. 1 (2019) ............................................................... 17, 21

*Trump v. Sierra Club*,
    No. 19A60, 2019 WL 3451617 (U.S. July 22, 2019) .................................... 21

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
  770 F. Supp. 3d 155 (D.D.C. 2025), *dismissed*,
  2025 WL 1350103 (D.C. Cir. May 2, 2025) ........................................................................ 13

*United States ex rel. Foreman v. AECOM*,
  19 F.4th 85 (2d Cir. 2021) ............................................................................................ 6

*Up State Fed. Credit Union v. Walker*,
  198 F.3d 372 (2d Cir. 1999) .................................................................................. 9, 10, 12

*Vera Inst. of Just. v. Dep't of Just.*,
  No. 25-CV-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025),
  *appeal filed*, No. 25-5248 (D.C. Cir. July 10, 2025)................................................ 9, 10, 13, 24

**STATUTES**

2 U.S.C. § 681 ........................................................................................................... 19

2 U.S.C. § 683 ........................................................................................................... 18

2 U.S.C. § 684 ........................................................................................................... 18

2 U.S.C. § 687 ....................................................................................................... 18, 19

2 U.S.C. § 688 ........................................................................................................... 18

5 U.S.C. § 701 ....................................................................................................... 14, 17

5 U.S.C. § 702 ............................................................................................................ 8

5 U.S.C. § 704 ........................................................................................................... 16

8 U.S.C. § 1225 ........................................................................................................... 9

8 U.S.C. § 1324 ....................................................................................................... 3, 4

28 U.S.C. § 1491 .................................................................................................... 8, 9, 12

Dep't of Homeland Sec. Appropriations Act, 2023,
  Pub. L. No. 117-328, 136 Stat. 4459 (2022).................................................................. 2, 15, 20

Dep't of Homeland Sec. Appropriations Act, 2024,
  Pub. L. No. 118-47, 138 Stat. 460................................................................................ 2, 15, 20

**RULES**

Fed. R. Civ. P. 12........................................................................................................ 2, 6, 7

**REGULATIONS**

2 C.F.R. Part 200 ............................................................................................. 3, 21

2 C.F.R. § 200.208 ................................................................................................. 4

2 C.F.R. § 200.300 ............................................................................................... 22

2 C.F.R. § 200.339 ............................................................................................... 21

2 C.F.R. § 200.340 ................................................................................................. 5

2 C.F.R. § 200.345 ............................................................................................... 21

31 C.F.R. § 210.3 ................................................................................................. 22

31 C.F.R. § 210.4 ................................................................................................. 22

31 C.F.R. § 210.6 ................................................................................................. 22

**OTHER AUTHORITIES**

2 Richard J. Pierce Jr., *Administrative Law Treatise* 764 (5th ed. 2010) ...................................... 23

2 U.S. Gov't Accountability Off., Principles of Federal Appropriations Law,
    GAO-06-382SP (3d ed. 2006) ............................................................................. 15

## INTRODUCTION

This case is about the City of New York's attempt to obtain money from the federal government arising from an alleged breach of contract. The Federal Emergency Management Agency (FEMA) issued grants to Plaintiff under the Shelter and Services Program (SSP). The grants were subject to various conditions contained in FEMA's solicitations and awards. Pursuant to the agreements with Plaintiff, FEMA has held approximately $80 million by reversing a reimbursement payment until Plaintiff could provide additional information to assess Plaintiff's request for funds. FEMA later decided to terminate Plaintiff's grant agreements, such that no new expenses could be incurred under them, due to a change in agency priorities.

In response, Plaintiff brought this action seeking injunctive relief requiring FEMA to (1) deposit the disputed $80 million in Plaintiff's bank account, and (2) reinstate the terminated agreements. Plaintiff's Second Amended Complaint (SAC), ECF No. 51, invokes the Administrative Procedure Act (APA) and the Constitution as ostensible bases for a claimed right to continue to access millions of dollars in terminated grants. But Plaintiff's claims for relief are entirely dependent on its assertion that the grant agreements provide a right to continued funding, and that the government's withholding of $80 million and later termination of the grants breached those agreements. In short, this case is a run-of-the mill contract dispute over money.

Plaintiff's APA claims challenging the withholding of $80 million and termination of the grant agreements are, in essence, contract-based claims for monetary relief against the federal government over which this Court lacks subject-matter jurisdiction. The Supreme Court's recent decision in *Department of Education v. California*, 604 U.S. ---, 145 S. Ct. 966 (2025) (per curiam) is controlling. In a case challenging the government's termination of federal grants, the Court held that "the Government [was] likely to succeed in showing [that] the District Court

1

lacked jurisdiction to order the payment of money under the APA" because the Tucker Act vests

exclusive jurisdiction over such actions in the Court of Federal Claims. *Id.* at 968. Further,

Defendants' discretionary decisions regarding the funds constitute unreviewable agency action,

are not ripe, and do not violate the law. Plaintiff's constitutional claims fare no better, as they

fail for various reasons. This Court should therefore grant Defendants' motion to dismiss the

SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND

### I.    Plaintiff's Grant Awards Under the Shelter and Services Program

In 2023 and 2024, Congress appropriated funds to the Department of Homeland

Security (DHS) to support sheltering and related activities provided by non-Federal entities, in

support of relieving overcrowding in short-term holding facilities of the U.S. Customs and

Border Protection. SAC ¶¶ 41-42; Dep't of Homeland Sec. Appropriations Act, 2023, Pub. L.

No. 117-328, div. F (DHS FY23 Appropriations Act), 136 Stat. 4459, 4725, 4730 (2022); Dep't

of Homeland Sec. Appropriations Act, 2024, Pub. L. No. 118-47, div. C (DHS FY24

Appropriations Act), 138 Stat. 460, 593, 598. Congress made funds available for costs of

shelter and eligible services to noncitizen migrants within 45 days of their release from DHS

custody. SAC ¶¶ 44, 48. DHS's efforts are to secure the United States' borders, *id.* ¶ 190, and

the grants were one way to safely, orderly, and humanely treat noncitizen migrants. *Id.* ¶ 244.

FEMA, through these grants, provided assistance to the grantees for certain services,

and that agreement was memorialized through Notice of Funding Opportunities (NOFOs) and

award letters. *Id.* ¶¶ 45, 54, 64, 68, 70-71.[1] Like most federal grants, these grants were subject

---

[1] The NOFOs and award letters are appended as Defendants' Exhibits (DE), and are identical to
the ones included in ECF 9: DE 1, FY23 NOFO and awards; DE 2, FY24 SSP-Allocated (SSP-
A) and awards; and DE 3, FY24 SSP-Competitive (SSP-C) and award.

to the recipient's acceptance of certain terms and conditions. *Id.* ¶ 67. Applicants "must comply with applicable statutes, rules and regulations, and policies, this NOFO, and the terms and conditions of the federal award. They must also comply with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements at 2 C.F.R. Part 200.'" *Id.* (quoting SSP-A NOFO at 30, SSP-C NOFO at 21). The grants were subject to DHS Standard Terms and Conditions, and applicable laws, including 8 U.S.C. § 1324. *Id.* ¶¶ 67, 148.

Plaintiff applied for and received funding for both fiscal years 2023 and 2024. *Id.* ¶¶ 45, 68, 70-71. For 2023, FEMA awarded Plaintiff $106.9 million and paid $70.6 million for allowable reimbursement costs. *Id.* ¶ 43. For 2024. FEMA awarded Plaintiff approximately $81.4 million through a series of three grant awards. *Id.* ¶¶ 70-71. Both the 2023 and 2024 awards incorporated the terms of the NOFOs through which Plaintiff applied and reaffirmed the requirement that Plaintiff comply with federal grant regulations, 2 C.F.R. Part 200. *Id.* ¶ 72.

## II.    **FEMA's Withholding of $80 Million in Reimbursement Funds**

On January 28, 2025, the Secretary of Homeland Security issued a directive addressing the agency's spending by placing "on hold pending review" all grant disbursements for which "non-profit organizations are eligible" and "touch in any way on immigration." *Id.* ¶ 90.

Notwithstanding the above, on February 4, 2025, FEMA made two reimbursement payments to Plaintiff under the 2024 grant agreement totaling approximately $80 million. *Id.* ¶ 82. FEMA stated these payments were made "in error." *Id*. ¶ 161 (quoting Decl. of Cameron Hamilton ¶ 9, ECF No. 17-1, Ex. A to Defs.' Mem. of L. in Opp'n to Pl.'s Mot. for PI and TRO, ECF No. 17). To address the error, FEMA contacted the Department of Treasury and after certifying over the phone that the payment was improper, FEMA submitted to "Treasury an Improper Recovery Request via the Treasury Check Information System to recover the

payment pursuant to 31 C.F.R. § 210.6(f)." *Id.* ¶ 162 (quoting Hamilton Decl. ¶ 11). Treasury withheld the funds from Plaintiff's account and returned the payment to FEMA. *Id.* ¶ 110.

On February 18, 2025, FEMA issued a "Remedy for Noncompliance Letter" regarding New York's SSP awards for both fiscal years 2023 and 2024. *Id.* ¶¶ 136-37; DE 4, Letter re: Remedy for Noncompliance Letter, Shelter and Services Program (SSP) (Feb. 18, 2025). The letter notified Plaintiff that FEMA would be "temporarily withholding payments" for its prior grant awards, that it had already recovered the payments totaling approximately $80 million, and that going forward it would also be instituting "specific conditions" on the grant award pursuant to 2 C.F.R. § 200.208. *Id.* ¶¶ 137-38. FEMA based these actions on "significant concerns that SSP funding is going to entities engaged in or facilitating illegal activities," providing the example of a hotel and SSP facility in New York City that is reportedly being used as a "recruiting center and base of operations" for a gang to "plan a variety of crimes," including some that can "reasonably be presumed to be conducted in the hotel itself." *Id.* ¶ 146. FEMA further stated its concern that entities receiving payments pursuant to New York's SSP program may be violating immigration laws, citing 8 U.S.C. § 1324(a)(1)(A) and applicable conspiracy, aiding or abetting, and attempt prohibitions. *Id.* ¶ 148. To ensure compliance while temporarily withholding funds, FEMA stated that it would conduct additional monitoring and review of Plaintiff's award. *Id.* ¶ 151. The letter also requested that Plaintiff submit information regarding the aliens serviced through the SSP award. *Id.* ¶ 152. On March 14, 2025, Plaintiff responded to the request. *Id.* ¶ 154.

### III.    FEMA's Termination of Plaintiff's SSP Grant Awards

On April 1, 2024, FEMA sent Plaintiff a letter terminating each of Plaintiff's SSP awards, effective immediately. *Id.* ¶ 188; DE 5, Letter re: Termination Notice: Shelter and

Services Program Grant Award (Apr. 1, 2025).  The letter stated that the termination was

because the grants "'no longer effectuate [] the program goals or agency priorities.'"  *Id.* ¶ 189

(brackets in original) (quoting 2 C.F.R. § 200.340(a)(2)).  The letter further stated that

> "consistent with President Trump's direction, [DHS] is focused on advancing the
> essential mission of enforcing immigration laws and securing the border.  Consequently,
> grant programs that support, or have the potential to support, illegal immigration through
> funding illegal activities or support for illegal aliens that is not consistent with DHS's
> enforcement focus do not effectuate the agency's current priorities."

*Id.* ¶ 190.  "The Termination Letter asserted that FEMA took this action 'pursuant to the terms

and conditions of the grant awards,' which were defined to include the applicable NOFOs and 2

C.F.R. § 200.340(a)(2)."  *Id.* ¶ 189.

## IV.    Procedural History

On February 21, 2025, Plaintiff filed this lawsuit, ECF No. 1, and moved for both a

temporary restraining order (TRO) and preliminary injunction (PI).  ECF No. 5.  On March 5,

2025, the Court denied the TRO.  ECF No. 42.  In response, Plaintiff withdrew its request for a

PI, and the Court terminated Plaintiff's motion.  ECF No. 40.

On June 13, 2025, Plaintiff filed the SAC, which, based on the APA and Constitution,

challenges FEMA's withholding of the $80 million reimbursement and grant terminations.[2]

Plaintiff alleges that these actions are arbitrary and capricious (Counts 1-2), in excess of

statutory authority (Counts 3-4), and procedurally deficient (Count 5).  Plaintiff also asserts

violations of the Due Process Clause, Separation of Powers, and Spending Clause (Counts 6-8).

Plaintiff seeks an order returning "$80 million to the City's bank account" and prohibiting

---

[2] The SAC characterizes these two actions in various confusing and overlapping ways, such as
the "Money Grab", the "Zero Out", the "Withholding of SSP Funds", the "Illegal
Pause/Suspension", and "Termination of SSP."  Distilled to its essence, however, the SAC seeks
an order "returning the $80 million to the City's bank account" and an injunction prohibiting
FEMA from "terminating the City's SSP awards."  SAC ¶ 291.

FEMA from "terminating the City's SSP awards."  SAC ¶¶ 239, 273 291.

## LEGAL STANDARD

### I.    In General

On a motion to dismiss, a court "accept[s] as true" "all well-pleaded factual allegations" and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citations omitted).  The Court may consider both "the facts and allegations … contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

"Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

### II.    Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss a claim for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In considering a Rule 12(b)(1) motion, the Court "'must accept as true all material factual allegations in the complaint' and should refrain from drawing argumentative inferences in favor of the party contesting jurisdiction."  *Dickerson v. Mut. of Am.*, 703 F. Supp. 2d 283, 289 (S.D.N.Y. 2010) (quoting *Atl.*

*Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)). "[T]he burden of

establishing" that a federal court has subject-matter jurisdiction always "rests upon the party

asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### III.    Federal Rule for Civil Procedure 12(b)(6)

A defendant may move to dismiss a claim for "failure to state a clam upon which relief

can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a

complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842,

854 (2d Cir. 2021). Plaintiff "must provide the grounds upon which [Plaintiff's] claim rests

through factual allegations sufficient to raise a right to relief above the speculative level." *Rich*

*v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (quoting *Gallop v. Cheney*, 642

F.3d 364, 368 (2d Cir. 2011)). Thus, "even if the complaint contains sufficiently 'well-pleaded'

allegations, 'only a complaint that states a plausible claim for relief survives a motion to

dismiss.'" *Gallop*, 642 F.3d at 368 (quoting *Iqbal*, 556 U.S. at 679). "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Benefit*

*Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,

712 F.3d 705, 718 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 679).

### ARGUMENT

### I.    The Court Lacks Jurisdiction Under the APA to Compel the Government to Pay Money Under a Contract

Plaintiff's APA claims (Counts 1-5) should be dismissed at the threshold because, as the

Supreme Court recently confirmed, this Court lacks jurisdiction under the APA "to enforce a

contractual obligation to pay money" against the federal government. *Dep't of Education*, 145 S. Ct. at 968 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). And there is no question here that the relief Plaintiff seeks is for the government to keep paying money under the terms of the agreements. *See e.g.*, SAC ¶ 239 ("order[] Defendants to … return[] the $80 million to the City's bank account"), ¶ 291 (enjoin "withholding of the SSP24 and SSP23 funds" and "terminating the City's SSP awards").

"In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. . . . A showing of jurisdiction is not alone sufficient to allow the instant suit to proceed-there must also be a showing of specific waiver of sovereign immunity." *Presidential Gardens Assocs. v. United States ex. rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 139 (2d Cir. 1999) (single dash in original). The APA provides a limited waiver of sovereign immunity for claims against the United States "seeking relief other than money damages" for persons "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. "The APA's waiver of sovereign immunity does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Dep't of Education*, 145 S. Ct. at 968. This "important carveout" to the APA's immunity waiver "prevents plaintiffs from exploiting" that waiver "to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). Plaintiff's attempt to use the APA to compel the government to pay money under the terms of the relevant grant agreements is "impliedly forbid[den]," 5 U.S.C. § 702, by the Tucker Act.

The Tucker Act provides in relevant part that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. §

1491(a)(1).  "The Tucker Act impliedly forbids relief other than remedies provided by the Court of Federal Claims for actions that arise out of a contract with the United States." *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) (cleaned up and citation omitted). Regardless of how a claim is styled, the court lacks jurisdiction if it "is in 'its essence' contractual." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 603 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)).

> "The courts have established firmly that where the prime objective of the plaintiff is to obtain money from the Government, the jurisdiction of the Court of Claims under § 1491(a)(1) could not be avoided by framing a complaint to appear to seek only injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining of money damages."

*B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727 (2d Cir. 1983).

To begin with, a grant upon conditions, and the acceptance of that grant by the recipient, constitutes a contract. *See McGee vs. Mathis*, 71 U.S. 143, 155 (1866) ("It is not doubted that the grant by the United States to the State upon conditions [for swamp and overflowed government lands], and the acceptance of the grant by the State, constituted a contract. All the elements of a contract met in the transaction,-competent parties, proper subject-matter, sufficient consideration, and consent of minds.").  In accepting those federal funds, Plaintiff agreed to abide by the grant's conditions. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) ("legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.").  And the federal government received something of value — Plaintiff  agreed to house aliens whom DHS would otherwise detain under the immigration laws, *see, e.g.,* 8 U.S.C. § 1225(b), allowing DHS to more efficiently use its limited resources to satisfy its obligations under the immigration laws. *See Vera Inst. of Just. v. Dep't of Just.*, No. 25-CV-1643 (APM),

2025 WL 1865160, at *10 (D.D.C. July 7, 2025) (concluding Justice grants are contracts subject to the Tucker Act based on Federal Circuit precedent), *appeal filed*, No. 25-5248 (D.C. Cir. July 10, 2025).

Further, "[w]hether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases [its] claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Up State*, 198 F.3d at 375 (quoting *Megapulse, Inc.*, 672 F.2d at 968)).

For the "source of the rights" prong, the Second Circuit has rejected the notion that a plaintiff may disguise the claim as not sounding in contract and instead ensures "the right the plaintiff seeks to vindicate 'stems from [an] independent, non-contractual source.'" *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017) (quoting *Up State*, 198 F. 3d at 376).

The second prong considers the type of relief sought. *Megapulse*, 672 F.2d at 968. "Actions seeking specific performance of a contract, brought in order to avoid the Tucker Act's limitation on money judgments, are not allowed to be brought against the United States." *Presidential Gardens*, 175 F.3d at 143; *cf. Great-West*, 534 U.S. at 211 n.1 ("[A]ny claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction.").

Applying the two-pronged test confirms that Plaintiff's APA claims (Counts 1-5) amount to the sort of contractual claims for monetary relief against the federal government over which this Court lacks jurisdiction. Plaintiff's claims are premised on contractual grant agreements, challenge the government's exercise of a right to withhold funds according to the agreement's terms, and seek to order the government to pay money pursuant to the terms. Such claims must be heard in the Court of Federal Claims.

Starting with the source of the rights, Plaintiff asserts Defendants' lack of basis to withhold the $80 million in reimbursement funds because Plaintiff was "eligible for reimbursement under the SSP grants."  SAC ¶ 232.  Further, Plaintiff alleges that Defendants lack a legal basis to hold funding because "Defendants have not identified any costs that are not reimbursable under the SSP grants and have not identified any proper grounds to suspend or terminate SSP or to withhold or deny payment."  SAC ¶ 243.  Moreover, for Count 5, Plaintiff focused almost exclusively on the grant itself:

> "Neither the DHS Appropriations Act, the SSP grant Award Letters, the NOFOs nor the Code of Federal Regulations, incorporated into the SSP grant documents, permit Defendants to grab back funds duly disbursed by FEMA to the City pursuant to and in accordance with the SSP grants' terms and conditions. Nor do they allow Defendants to pause or suspend SSP or withhold payment of funds that were approved pursuant to and in accordance with the SSP grants' terms and conditions."

SAC ¶ 280.

Plaintiff has no colorable claim to any funding absent the grant agreements.  Neither the appropriations acts authorizing the grant funding, the APA, or the Constitution confers any substantive right on Plaintiff to receive government funding.  And deciding whether FEMA lawfully withheld funds "turns *entirely* on the terms of" the grant agreements.  *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 69 (D.C. Cir. 2004).  In short, Plaintiff's asserted right to reimbursement of the $80 million or continued grant funding "in no sense . . . exist[s] independently of" the grant agreement.  *See Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985) (concluding plaintiff's claim against the government amounted to "a contract dispute" over which a district court lacked jurisdiction under the APA); *see Ingersoll-Rand Co. v. United States,* 780 F.2d 74, 78 (D.C. Cir. 1985).  In other words, if there were no grant, there would be no claim.

The relief Plaintiff seeks, moreover, only bolsters the conclusion that its APA claims are

essentially contractual in nature.  Plaintiff seeks an order requiring the Government to pay $80 million in disputed reimbursement costs and to pay the remaining balances on the fiscal year 2023 and 2024 grant awards.  SAC ¶¶ 239, 262, 291.  Plaintiff does so pursuant to the only legal instrument that would arguably entitle it to any funding at all — *i.e.*, the grants.  Such relief is indistinguishable from the contractual remedy of specific performance, confirming that Plaintiff's claims sound in contract.  *Up State*, 198 F.3d at 377 (finding no jurisdiction where the relief requested "would be analogous to a contractual remedy for specific performance because it would enforce an alleged agreement between the parties").

Any doubts as to whether this Court has jurisdiction to hear Plaintiff's contract-based claims have been dispelled by *Department of Education v. California*.  In *Department of Education*, a district court issued a TRO "enjoining the Government from terminating various education-related grants" and "requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue," 145 S. Ct. at 968, after it concluded that plaintiffs were likely to succeed on their claim that the government's termination decision was arbitrary and capricious under the APA.  *See California v. U.S. Dep't of Education*, 769 F. Supp. 3d 72, 78 (D. Mass. 2025).  The Supreme Court stayed the district court's TRO, determining, among other things, that "the Government [was] likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA."  *Dep't of Education*, 145 S. Ct. at 968.  The Court explained that "the APA's limited waiver of sovereign immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court [had] ordered[.]"  *Id.* (quoting *Great-West*, 534 U.S. at 212).  Instead, "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'"  *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

*Department of Education* underscores that this Court lacks jurisdiction over Plaintiff's grant-based claims.  Like the *Department of Education* plaintiffs, Plaintiff seeks relief from the termination of a grant under which it received federal funding.  Like the *Department of Education* plaintiffs, Plaintiff challenges that grant termination under the APA, including on the ground that the termination is arbitrary and capricious.  SAC ¶¶ 238, 247.  Like the district court in *Department of Education*, this Court "lack[s] jurisdiction . . . under the APA" to order Defendants "to pay money" pursuant to a grant.  *Dep't of Education*, 145 S. Ct. at 968.

This Court should dismiss Plaintiff's grant-based APA claims for lack of jurisdiction, which would be consistent with what other courts have done in similar cases involving government grants or contracts in accordance with the Supreme Court's reasoning in *Department of Education*.[3]  *See Sustainability Inst. v. Trump,* No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (staying injunction where the grants "were awarded by federal executive agencies to specific grantees from a generalized fund"); *Vera Inst. of Just.*, 2025 WL 1865160, at *10-12 (dismissing APA arbitrary-and-capricious grant termination claims); *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025) (denying TRO after concluding that the court lacked the authority to "order the Government to pay money due on a contract"), *dismissed,* 2025 WL 1350103 (D.C. Cir. May 2, 2025)*; Solutions in Hometown Connections v. Noem*, No. 25-cv-885, 2025 WL 1103253, at *8-*10 (D. Md. Apr. 14, 2025) (denying plaintiffs' TRO motion challenging the termination of certain U.S.

---

[3] Other decisions from Judges of this District are not to the contrary.  *National Job Corps Ass'n v. Dep't of Labor*, -- F. Supp. 3d --, 2025 U.S. Dist. LEXIS 121052 (S.D.N.Y. June 25, 2025) is distinguishable because the basis of relief here is the grant itself, and the relief Plaintiff seeks is monetary in nature.  Similarly, *Metro. Transp. Auth. v. Duffy*, -- F. Supp. 3d --, 2025 U.S. Dist. LEXIS 101448 (S.D.N.Y. May 28, 2025), is distinguishable because in this case Plaintiff seeks the government to pay money.

Citizenship and Immigration Services grants and concluding that plaintiffs' APA claims were "in essence contract claims against the United States for which the . . . Court of Federal Claims has exclusive jurisdiction"); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 25-cv-30041, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) (dissolving TRO because the *Department of Education* order is an "unmistakable directive that, for jurisdictional purposes, the proper forum for this case is the Court of Federal Claims").

## II.    Grant Funding Decisions Are Committed to Agency Discretion by Law

Plaintiff's APA claims in Counts 2, 4, and 5 also fail for a separate reason: an agency's decision concerning how to allocate and expend funding is "committed to agency discretion by law" and this is not subject to APA review.  5 U.S.C. § 701(a)(2).  In *Lincoln v. Vigil*, the Supreme Court underscored that the APA, by its own terms, "preclude[s] judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'"  508 U.S. 182, 191 (1993) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 817 (1992)).  *Lincoln* held that an agency's "allocation of funds from a lump-sum appropriation" is one such "administrative decision traditionally regarded as committed to agency discretion," given that "the very point of a lump-sum appropriation," the Court explained, "is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."  *Id.* at 192.  The Court concluded that the Indian Health Service's decision to discontinue a program that was (1) funded through the agency's yearly lump-sum appropriations (2) but not otherwise mandated or prescribed by statute was "committed to [the agency's] discretion" and thus "unreviewable" under the APA.  *Id.* at 193–94.  That same principle applies to the discretionary grant funding at issue in this case.  The terminated grants are not prescribed by any federal statute or regulation in

14

terms of whom the recipients are. Nor has FEMA received funding through targeted

appropriations that require awarding a grant to Plaintiff. Although the funds were earmarked

("the portion of a lump-sum appropriation designated for a particular purpose," 2 U.S. Gov't

Accountability Off., Principles of Federal Appropriations Law, GAO-06-382SP, at 6-26 (3d ed.

2006)), for costs to support sheltering and related services by non-Federal entities, *Lincoln* still

controls. "Although an agency is required to use earmarked funds for their specified purpose, an

agency may still exercise discretion within the earmark." *Amica Ctr. for Immigrant Rts. v. Dep't

of Just.*, No. 25-cv-298 (RDM), 2025 WL 1852762, at *14 (D.D.C. July 6, 2025) (citing *In re

Newport News Shipbuilding & Dry Dock Co.*, 55 Comp. Gen. 812 (1976)).

Further, the appropriations acts at issue provide no standards "against which to judge the

agency's exercise of discretion" in choosing how best to spend that money to advance agency

priorities. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The acts appropriate funds to FEMA

"to support sheltering and related activities provided by non-Federal entities." DHS FY23

Appropriations Act, 136 Stat. at 4730; DHS FY24 Appropriations Act, 138 Stat. at 598. The

broad mandates demonstrate that they authorized FEMA to "meet its statutory responsibilities in

what it sees as the most effective or desirable way." *Lincoln*, 508 U.S. at 192–93.

As *Lincoln* made clear, "allocation of funds" from lump-sum appropriations to various

programs and priorities "requires 'a complicated balance[e] of a number of factors,'" including

whether the agency's "'resources are best spent' on one program or another" and "whether a

particular program 'best fits the agency's overall policies.'" *Id.* at 193 (quoting *Heckler*, 470

U.S. at 831). For discretionary grant awards that are funded entirely out of such lump-sum

appropriations, any decisions regarding how much funding to allocate to a particular grant

recipient within the statutory framework — or whether to continue a grant award at all —are

committed entirely to the agency's discretion.  *See id.* at 193–94.  And that discretion includes the authority to terminate grants that no longer advance agency priorities.  Thus, FEMA's "decision to discontinue" funding for Plaintiff's grants are "accordingly unreviewable under § 701(a)(2)" of the APA.  *Id.* at 193.

### III.    FEMA Has Not Taken Final Agency Action to Withhold the Disputed $80 Million

"The APA explicitly requires that an agency action be final before a claim is ripe for review."  *Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999) (citing 5 U.S.C. § 704).  For an agency action to be final, "'[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.'"  *Salazar v. King*, 822 F.3d 61, 82 (2d Cir. 2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  Second, it must be "'one by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (quoting *Bennett*, 520 U.S. at 177-78).

Here, there is no "final agency action" because the SAC does not allege that Defendants have made a final decision to withhold the $80 million reimbursement on a permanent basis. Indeed, the SAC confirms that Plaintiff was informed that FEMA was "temporarily withholding" the $80 million payment.  SAC ¶¶ 136-38, 151-52.  The February 18, 2025 letter from FEMA explicitly requested more information in order to make a final determination, *id.* ¶ 152.  Plaintiff provided the information requested on March 14, 2025, and the SAC does not allege that the agency has made a final decision in response to this submission.  *Id.* ¶ 154; *see* ¶ 213 (funds available and so no need for the Court to address website claim).  As Defendants have not provided a final decision to Plaintiff regarding the requested reimbursement, Counts 1, 3, and 5

should be dismissed.[4]

### IV.    Plaintiff Fails to State a Claim That Defendants Have Acted Contrary to Law, Ultra Vires, or in Excess of Statutory Authority

Counts 3 and 4 of the SAC allege "substantive APA violations" claiming that Defendants "cannot unilaterally grab back or refuse to disburse funds appropriated by Congress" in violation of the Impoundment Control Act of 1974 (ICA), the DHS FY23 and FY 24 Appropriations Acts, and various federal regulations.  SAC ¶¶ 256-61, 267-71.  This Court should dismiss these counts because Plaintiff fails to state a justiciable and plausible claim for relief.

As a threshold matter, the ICA and DHS Appropriation Acts do not confer rights that may be enforced through an APA suit.  *Cf. Trump v. Sierra Club*, 588 U.S. --, 140 S. Ct. 1 (2019) (granting stay of injunction, including because "the Government has made a sufficient showing at this stage that the plaintiffs have no cause of action to obtain review of the Acting Secretary's compliance with" a statute governing the transfer of funds among appropriation accounts).

Two related limitations restrict Plaintiff from using the APA's cause of action to enforce a statute where Congress did not intend such private enforcement.

First, a plaintiff may not seek review under the APA if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1).  By providing a detailed scheme for administrative and judicial review, Congress can displace the APA's default cause of action.  *See, e.g., Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).  Preclusion is determined "not only from [the statute's] express language, but also from the structure of the statutory scheme."  *Id.*

---

[4] The Second Circuit has not resolved whether the APA's "final agency action" and "committed to agency discretion" limitations "are truly jurisdictional or are rather essential elements of the APA claims for relief."  *Sharkey v. Quarantillo,* 541 F.3d 75, 87 (2d Cir. 2008) (quoting 5 U.S.C. § 701(a)(2)).  Defendants accordingly base their arguments for dismissal under both Rules 12(b)(1) and (b)(6).

Second, a "plaintiff must establish that the injury" it complains of "falls within the zone of interests sought to be protected by the statutory provision" at issue. *Air Courier Conf. of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523-24 (1991) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990)). That limitation reflects the common-sense intuition that Congress does not intend to extend a cause of action to "plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions" they seek to enforce. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011); *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

As the ICA reflects, Congress has constructed a reticulated scheme to govern the relationship between the Legislative and Executive Branches when it comes to spending appropriated funds. *Dabney v. Reagan*, 542 F. Supp. 756, 760 (S.D.N.Y. 1982). That statute is built around give-and-take between the political branches. The statute directs the President to send a special message to Congress when he proposes to defer or rescind appropriated funds, *see* 2 U.S.C. §§ 683(a), 684(a), which allows Congress to determine how to respond given the particular circumstances of a specific proposal. And the statute specifies particular forms of legislative action that Congress may undertake to address proposed rescissions. *See id.* § 688.

Moreover, insofar as the ICA contemplates litigation to enforce any obligation to spend appropriated funds, it provides for suits brought by the Comptroller General, an official within the Legislative Branch, only in United States District Court for the District of Columbia. *Id.* § 687. For that reason, many courts have concluded the ICA does not provide a private cause of action. *See Gen. Land Off. of State of Tex. v. Biden*, 722 F. Supp. 3d 710, 734–35 (S.D. Tex. 2024); *Pub. Citizen v. Stockman*, 528 F. Supp. 824, 830 n.1 (D.D.C. 1981); *Rocky Ford Hous. Auth. v. U.S. Dep't of Agric.*, 427 F. Supp. 118, 134 (D.D.C. 1977); *Rogers v. United*

*States*, 14 Cl. Ct. 39, 50 (1987), *aff'd*, 861 F.2d 729 (Fed. Cir. 1988).  Further, the statute imposes limitations on such suits until the Comptroller General files "an explanatory statement" of "the circumstances giving rise to the" contemplated suit "with the Speaker of the House of Representatives and the President of the Senate" and then "25 calendar days of continuous session of the Congress" elapse.  2 U.S.C. § 687.  The statute does not contemplate enforcement by a city government, let alone enforcement without regard to the limitations Congress imposed on the Comptroller General.

Congress may impliedly preclude some parties from seeking judicial review of administrative action by constructing a detailed scheme that provides for review only by other parties.  *See Block*, 467 U.S. at 346.  The ICA provides a variety of mechanisms for legislative responses to Executive Branch proposals to defer or rescind appropriated funds and, to the extent it contemplates litigation at all, it contemplates only suits brought by a Legislative Branch official and only after Congress has first had the opportunity to act.  That scheme provides no role for third parties like Plaintiff to play in either the legislative or judicial enforcement processes.  Moreover, the ICA provides that "[n]othing contained in this Act, or in any amendments made by this Act, shall be construed" as "affecting in any way the claims or defenses of any party to litigation concerning any impoundment."  2 U.S.C. § 681.  This makes clear Congress's intent that third parties not rely on the statute to generate a judicially enforceable right to compel spending that did not otherwise exist.  *See Gen. Land Off.*, 722 F. Supp. 3d at 734 ("alleged ICA violation has only one proper plaintiff: the Comptroller General").

For similar reasons, Plaintiff is not within the zone of interests of the ICA, which is directed at regulating the relationship between Congress and the Executive Branch.  Nothing in the text or history of the ICA establishes an intent to protect or regulate the budgets of city

governments who may incur costs associated with federal spending policies.  The ICA is not concerned with protecting New York City's fisc.  *See Stockman*, 528 F. Supp. at 830 n.1 (ICA "enacted to safeguard Congress's interests, not those of private citizens" and the absence of private right of action "pretermit[ted] any contention that plaintiff's interest in preserving the flow of appropriations is within the zone of interests intended to be protected by the ICA").

Plaintiff also falls outside the zone of interests of the DHS Appropriations Acts.  These acts appropriate funds to DHS "to support sheltering and related activities provided by non-Federal entities, including facility improvements and construction, in support of relieving overcrowding in short-term holding facilities of [CBP]."  DHS FY23 Appropriations Act, 136 Stat. at 4730; DHS FY24 Appropriations Act, 138 Stat. at 598.  These acts regulate and protect the interests of DHS and Congress in the federal spending and appropriations process.  Nothing in the text or context of these acts suggests any connection whatsoever to the interests of a city government who asserts that discretionary federal spending decisions harm its fisc.  *See Miccosukee Tribe of Indians of Fla. v. United States*, No. 08-23523-CIV, 2009 WL 10668917, at *4 (S.D. Fla. Sept. 30, 2009) (dismissing claims brought under a statute appropriating funds to a federal agency for a construction project on zone-of-interests grounds because the statute protected the agency's interest in receiving funds for the construction project, not an Indian tribe's interests in quiet enjoyment of land near the project).  When Congress appropriated the funds, it did not require DHS to consider the potential impact on city governments or limit DHS's discretion to expend funds to protect those interests.  The Acts govern the relationship between the Executive and Congress regarding federal spending, and do not confer judicially cognizable rights on city governments to second-guess spending decisions.

This conclusion is reinforced by the Supreme Court's decision in *Trump v. Sierra Club*.

There, the Court stayed an injunction against border wall construction based on a challenge to DoD's compliance with a provision of the DoD Appropriations Act authorizing transfers of funds between budget accounts.  The Court concluded that a group of environmental plaintiffs likely "have no cause of action to obtain review of the Acting Secretary's compliance with" the DoD appropriations transfer statute.  140 S. Ct. at 1.  The dispute in *Sierra Club* focused on whether the environmental plaintiffs fell within the zone of interests of the appropriations transfer provision they sought to enforce.  *See* Reply in Support of Application for a Stay Pending Appeal, *Trump v. Sierra Club*, No. 19A60, 2019 WL 3451617, at *3–10 (U.S. July 22, 2019).  As the Supreme Court emphasized, "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked."  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citation omitted).  Like the DoD transfer statute at issue in *Sierra Club*, Plaintiff alleges violations of federal appropriations acts that protect congressional control over DHS's appropriations, not the city's revenue stream.

Finally, Plaintiff alleges that Defendants lacked legal authority "under the C.F.R." to recover the $80 million reimbursement payment.  *See* SAC ¶ 260.  But Plaintiff cannot dispute DHS's general authority to withhold (and recover improper) payments from grant recipients based on noncompliance with federal law.  Nor could it: the authority of federal agencies to do so is well established in the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 2 C.F.R. Part 200, which broadly recognize agency authority to withhold, terminate, suspend, disallow, or recover federal funding.  *See* 2 C.F.R. § 200.339; 2 C.F.R. § 200.345(a)(1) (providing that the closeout of a federal award does not affect the "right of the Federal agency . . . to disallow costs and recover funds").  The relevant grant agreements, including the terms of which Plaintiff has agreed to abide by, confirms this: they state that if an

award recipient is in noncompliance with, among other things, "applicable federal statutes," the agency can "take other remedies," including "actions to disallow costs, recover funds, wholly or partly suspend or terminate the award, initiate suspension and debarment proceedings, withhold further federal awards, or take other remedies that may be legally available." DE 2 at 64-65. Expressly among the types of funds that FEMA may recover are "improper payments." *Id*. at 65.

Recovery of a payment made in error is consistent with FEMA's general obligation to ensure that "Federal funding is expended . . . in full accordance with the U.S. Constitution, applicable Federal statutes and regulations," 2 C.F.R. § 200.300(a), as well as applicable Bureau of Fiscal Service regulations. In particular, those regulations provide that an entity that participates in the Automated Clearing House (ACH) network to "originate[] or receive[] a Government entry agrees to be bound" by the regulations, 31 C.F.R. § 210.3(c), and also agrees "[t]hat the Federal Government may reverse any duplicate or erroneous entry or file as provided in § 210.6(f) of this part." *Id*. § 210.4(b)(5); *see also id*. § 210.6(f) (permitting an agency to "reverse any duplicate or erroneous entry"). FEMA therefore had authority to recover the funds.

## V.    Plaintiff's Constitutional Claims Should Be Dismissed

### A.    Plaintiff's Fifth Amendment Claim Fails (Count 6)

The Supreme Court has held that "[t]he word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union." *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966). It follows that the City of New York has no due process rights either. *See City of Sault Ste. Marie v. Andrews*, 532 F. Supp. 157, 167-68 (D.D.C. 1980) (city government "is not a person within the meaning of the Fifth Amendment"); *El Paso Cnty. Water Improvement Dist. No. 1 v. Int'l Boundary & Water Comm'n*, 701 F. Supp. 121, 123-24 (W.D. Tex. 1988) (holding that a Texas

political subdivision could not assert a due process claim). *Cf. City of N.Y. v. Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244, 295 (E.D.N.Y. 2005) (not deciding issue but citing *Katzenbach*, and *City of Sault Ste. Marie*), *aff'd in part and rev'd in part*, 524 F.3d 384 (2d Cir. 2008).

Even if the Due Process Clause applies to Plaintiff, its claim fails because Plaintiff has no protected property interest in continued grant funding.  When deciding a due process challenge, "[t]he first inquiry . . . is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citation omitted).  Without a "cognizable liberty or property interest," *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012), Plaintiff cannot state a procedural due process claim against the government.

Plaintiff incorrectly asserts that it has a property interest in funds "that were awarded and obligated to the City under SSP pending disbursement[.]"  SAC ¶ 296.  The grant agreements are contracts, *see supra* at 9–12, and "[t]he Supreme Court 'has never held that government contracts . . . create property interests protected by due process.'" *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014) (quoting 2 Richard J. Pierce Jr., *Administrative Law Treatise* 764 (5th ed. 2010)).  "Outside of the employment context, courts have resisted application of due-process principles to government contracts because '[w]ith scores of millions of government contracts in effect at any point in time, it is unimaginable that all government agencies would be required to provide a hearing before they take any action that is arguably inconsistent with a contract.'" *Id.* (quoting Pierce, *supra*, at 764) (citing cases); *see Kielczynski v. CIA*, 128 F. Supp. 2d 151, 161 (E.D.N.Y. 2001) (no basis for jurisdiction over plaintiff's due process claims in a contract dispute).  Indeed, several courts have recently held that grant recipients lack protected due process property interests.  *See Nat'l Urb. League v.*

23

*Trump*, -- F. Supp. 3d --, 2025 WL 1275613, at *17-19 (D.D.C. May 2, 2025) (denying due process claim challenging termination of contracts and grants related to diversity, equity, and inclusion); *Vera Inst. of Just.*, 2025 WL 1865160, at *16 ("Having failed to establish even a plausible property interest in the grant awards, Plaintiffs' Fifth Amendment claims must be dismissed."); *see also New Vision Photography*, 54 F. Supp. 3d at 28–29 (denying procedural due process claim based on termination of Medicare provider contract).

Instead, "a claim that a government agency has violated a party's right to due process by refusing performance under a contract is substantively indistinguishable from a breach of contract claim," and "[t]he process to which plaintiff is due . . . is a post-deprivation suit for breach of the contract." *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1128 (Fed Cir. 2007).

The right to payment on a contract must rise to the level of a constitutionally protected property interest.

> "Property interests protected by due process are neither created nor defined by the Constitution. 'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"

*Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 29 (2d Cir. 1994) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiff has not cited any such independent source. Instead, this is simply an alleged breach of an ordinary contract that does not rise to the level of a constitutionally protected property interest. *See Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) ("a simple breach of contract does not amount to an unconstitutional deprivation of property").

Finally, Plaintiff's due process claim is undermined by its failure to exhaust DHS's

administrative appeal process.  The termination letter provided an opportunity to object.  DE 5.

To raise a due process claim, an individual must "'exhaust[] the full set of available

administrative review procedures[.]'" *Hadwan v. U.S. Dep't of State*, 139 F.4th 209, 227 (2d Cir.

2025) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 329 n.10 (1976)).

 B. <u>Plaintiff's Separation of Powers and Spending Clause Claims Fail Too</u>

 Plaintiff's "separation of powers" claim (Count 7) is based entirely on the premise that

Defendants have "overridden the careful judgments of Congress by acting without legitimate

basis or justification in taking back funding and withholding funding" under the DHS

Appropriations Acts.  SAC ¶ 305.  But this is simply a packaging of its statutory APA claims

(Counts 3-4) dressed up in constitutional language.  As the Supreme Court has confirmed,

"claims simply alleging that the President has exceeded his statutory authority are not

'constitutional' claims." *Dalton v. Specter*, 511 U.S. 462, 473 (1994).  In *Dalton*, the Court

rejected the proposition that "whenever the President acts in excess of his statutory authority, he

also violates the constitutional separation-of-powers doctrine." *Id.* at 471.  Not "every action by

the President, or by another executive official, in excess of his statutory authority is *ipso facto* in

violation of the Constitution." *Id.* at 472.  In reaching this conclusion, the Supreme Court

carefully "distinguished between claims of constitutional violations and claims that an official

has acted in excess of his statutory authority." *Id.* (collecting cases).  The Constitution is

implicated only if executive officers rely on it as "[t]he only basis of authority" or if the officers

rely on an unconstitutional statute. *Id.* at 473 & n.5.  Because Plaintiff's constitutional claims

focus entirely on its contentions that DHS and FEMA have not acted consistent with their

statutory appropriations obligations, such claims are untenable under *Dalton*.

 In any event, Plaintiff identifies no specific provision of the pertinent appropriations acts

that confers on them the right to receive particular funds. Instead, it asserts generally that the government's failure to "effectuate the DHS Appropriations Act" is "contrary to law." SAC ¶ 305. But that claim is simply an "undifferentiated, generalized grievance about the conduct of government." *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam). Indeed, the Supreme Court has long held that "[a] citizen may not sue" in federal court "based only on an 'asserted right to have the Government act in accordance with law.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citation omitted); *see Lance*, 549 U.S. at 439 ("Our refusal to serve as a forum for generalized grievances has a lengthy pedigree."). Any effort by Plaintiff to challenge Defendants' alleged noncompliance with certain appropriations acts would effectively amount to Plaintiff merely lodging "a general legal, moral, ideological, or policy objection to a particular government action," which it lacks standing to do. *Id.*

Plaintiff's Spending Clause claim (Count 8) fares no better because the SAC fails to identify any new conditions placed on its receipt of federal funds. The Spending Clause allows Congress to "fix the terms on which it shall disburse federal money to the States." *Pennhurst*, 451 U.S. at 17; *South Dakota v. Dole*, 483 U.S. 203, 206 (1987). Conditions on funding must be "unambiguous[]" and they cannot "surpris[e] participating States [or localities] with post acceptance or 'retroactive' conditions." *Pennhurst*, 451 U.S. at 17, 25. However, advance notice of grant conditions may be provided by the federal grant-making agency, rather than Congress, "as long [as] they were grounded in statutory provisions, regulations, and other guidelines provided by the Department at the time of the grant." *New York v. U.S. Dep't of Just.*, 951 F.3d 84, 110 (2d Cir. 2020) (citations omitted).

Plaintiff alleges in conclusory fashion that Defendants have violated the Spending Clause by "imposing purported new conditions and requirements on SSP funding." SAC ¶ 312. But

Plaintiff does not identify exactly what grant conditions are "new" and "retroactive" and therefore purportedly unconstitutional. The absence of any specifics is not surprising because the grant awards and the letter of non-compliance that DHS sent Plaintiff in February 2025 identifies terms, conditions. and remedies of which Plaintiff was on notice when it accepted the SSP grants. *Id.* ¶¶ 70-73, 135-154; *see Tennessee v. Becerra*, 131 F.4th 350, 363 (6th Cir. 2025) (no Spending Clause violation where recipient of funds was on clear notice that it was required to follow applicable regulatory requirements and voluntarily agreed to abide by them). Because Defendants have provided Plaintiff with advance notice of terms and conditions of its grant awards, Plaintiff's Spending Clause claim fails. *New York*, 951 F.3d at 110.

## CONCLUSION

Defendants respectfully request the Court dismiss the SAC with prejudice for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)

I certify that the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint contains 8,750 words and conforms to the 8,750 word-count limit set by Local Civil Rule 7.1 and the Individual Rules and Practices in Civil Cases.

Dated: July 18, 2025

      S/ Syed Ahmad
Syed Ahmad (IL Bar 6217343)
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
Washington, DC 20005
202-507-6075
syed.n.ahmad@usdoj.gov