

U.S. Department of Justice
Civil Division
Federal Programs Branch

*Washington, DC 20530*

July 18, 2025

**VIA ECF**

Hon. Jennifer H. Rearden
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

Subject:   Defendants' Motion to Dismiss in *City of New York v. Trump et al.*, 25 Civ. 1510

Dear Judge Rearden,

     We represent Defendants in the subject case. Defendants have filed a Motion to Dismiss and included an accompanying Memorandum of Law, ECF Nos. 52 and 53. In accordance with your Individual Rules and Practices in Civil Cases of March 21, 2025, this letter outlines the substantive arguments advanced in the motion. This case is about the City of New York's attempt to obtain money from the federal government arising from an alleged breach of contract by filing in this Court instead of the Court of Federal Claims.

     The Federal Emergency Management Agency (FEMA) issued grants to Plaintiff in fiscal years 2023 and 2024 under the Shelter and Services Program (SSP). The grants were subject to various conditions contained in FEMA's solicitations (Notice of Funding Opportunities) and award letters. ECF Nos. 53-1 and -2 (split file due to size), 53-3 and 53-4. On January 28, 2025, the Secretary of Homeland Security issued a directive addressing the agency's spending by placing "on hold pending review" all grant disbursements for which "non-profit organizations are eligible" and "touch in any way on immigration." Second Amended Complaint (SAC), ECF No. 51 ¶ 90. Notwithstanding the directive, on February 4, 2025, FEMA made two reimbursement payments to Plaintiff under the 2024 grant agreement totaling approximately $80 million in error. *Id.* ¶¶ 82, 161. FEMA contacted the Treasury Department, which was able to return the payment to FEMA. *Id.* ¶ 110.

     On February 18, 2025, FEMA issued a "Remedy for Noncompliance Letter" regarding New York's SSP awards for both fiscal years 2023 and 2024. *Id.* ¶¶ 136-37; ECF 53-5. The letter notified Plaintiff that FEMA would be "temporarily withholding payments" for its prior grant awards, that it had already recovered its two most recent payments totaling approximately $80 million, and that going forward it would also be instituting "specific conditions" on the grant award pursuant to 2 C.F.R. § 200.208. *Id.* ¶¶ 137-38. In essence, the money was being held until Plaintiff could provide additional information to FEMA.

In response, on February 21, 2025, Plaintiff filed this lawsuit, ECF No. 1, and moved for both a temporary restraining order and preliminary injunction. ECF Nos., 3, 5, 10. On March 5, 2025, the Court denied Plaintiff's motion for a temporary restraining order. ECF No. 42.

On April 1, 2025, FEMA decided to terminate Plaintiff's SSP grant agreements, such that no new expenses could be incurred under them, due to a change in agency priorities. ECF 53-6. Plaintiff filed its SAC to address this development, seeking injunctive relief requiring FEMA to (1) deposit the disputed $80 million in Plaintiff's bank account, and (2) reinstate the terminated grant agreements. Plaintiff's eight counts invoke the Administrative Procedure Act (APA) and the Constitution as ostensible bases for a claimed right to continue to access millions of dollars in grants that FEMA has terminated. But Plaintiff's claims for relief are entirely dependent on their assertion that the grant agreements provide a right to continued funding, and that the government's withholding of $80 million and later termination of the grants breached the terms of those agreements. This case is a run-of-the mill contract dispute over money.

Plaintiff's APA claims challenging the $80 million withholding and termination of the grant agreements are, in essence, contract-based claims for monetary relief against the federal government over which this Court lacks subject-matter jurisdiction. The Supreme Court's recent decision in *Department of Education v. California*, 604 U.S. ---, 145 S. Ct. 966 (2025) (per curiam) is controlling. In a case challenging the government's termination of federal grants, the Court held that "the Government [was] likely to succeed in showing [that] the District Court lacked jurisdiction to order the payment of money under the APA" because the Tucker Act vests exclusive jurisdiction over such actions in the Court of Federal Claims. *Id.* at 968.

"The Tucker Act impliedly forbids relief other than remedies provided by the Court of Federal Claims for actions that arise out of a contract with the United States." *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) (cleaned up and citation omitted). A grant by the United States upon conditions, and the acceptance of that grant by the recipient, constitutes a contract. *See McGee vs. Mathis*, 71 U.S. 143, 155 (1866). "Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases [its] claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Up State*, 198 F.3d at 375 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982))).

In examining the "source of the rights" prong, the Second Circuit has rejected the notion that a plaintiff may disguise the claim as not sounding in contract and instead looks to ensure "the right the plaintiff seeks to vindicate 'stems from [an] independent, non-contractual source.'" *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017). As to the type of relief sought prong, "[a]ctions seeking specific performance of a contract, brought in order to avoid the Tucker Act's limitation on money judgments, are not allowed to be brought against the United States." *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 143 (2d Cir. 1999).

Plaintiff asserts a lack of basis to withhold the $80 million because it was "eligible for reimbursement under the SSP grants[,]" SAC ¶ 232, *i.e.*, the source of its right is the grant. Plaintiff's requested relief—an order to pay—is indistinguishable from the contractual remedy of specific performance, confirming Plaintiff's claims sound in contract. *Up State*, 198 F.3d at 377.

Plaintiff's APA claims, Counts 2, 4, and 5, fail for a separate reason: an agency's decision concerning how to allocate and expend federal funding is "committed to agency discretion by law" and is thus not subject to APA review. 5 U.S.C. § 701(a)(2). In *Lincoln v. Vigil*, the Supreme Court underscored that the APA, by its own terms, "preclude[s] judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" 508 U.S. 182, 191 (1993).

Plaintiff's Counts 1, 3, and 5 should also be dismissed because there is no final agency action. "The APA explicitly requires that an agency action be final before a claim is ripe for review." *Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999) (citing 5 U.S.C. § 704). The February 18, 2025 letter from FEMA explicitly requested more information in order to make a final determination. *Id.* ¶ 152. Plaintiff provided the information requested on March 14, 2025, and the SAC does not allege that the agency has made a final decision to withhold the $80 million reimbursement payment on a permanent basis. *Id.* ¶ 154.

Plaintiff's Counts 3 and 4, alleging violations of the Impoundment Control Act of 1974 (ICA), the DHS FY23 and FY 24 Appropriations Acts, and various federal regulations, should be dismissed too for failing to state a justiciable and plausible claim for relief. The ICA contemplates litigation to enforce any obligation to spend appropriated funds by the Comptroller General. 2 U.S.C. § 687. The statute does not contemplate private enforcement by a city government or even suggest that a city government is within its zone of interests. With regard to the appropriation acts, they govern the relationship between the Executive and Congress regarding federal spending, and do not confer judicially cognizable rights on city governments to second-guess federal spending decisions. *Cf. Trump v. Sierra Club*, 140 S. Ct. 1 (2019) (granting stay of injunction, including because "the Government has made a sufficient showing at this stage that the plaintiffs have no cause of action to obtain review of the Acting Secretary's compliance with" a statute governing the transfer of funds among appropriation accounts).

Plaintiff's constitutional claims fail to state a justiciable claim. Plaintiff, as a city government, has no rights under the Due Process Clause (Count 6) and even if it did, the right to payment on a contract does not rise to the level of a constitutionally protected property interest. *See Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 29 (2d Cir. 1994). The Separation of Powers claim (Count 7) fails to state a plausible claim for relief. *See Dalton v. Specter*, 511 U.S. 462, 473 & n.5 (1994) (Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or on an unconstitutional statute). Finally, as Plaintiff has notice of the terms and conditions of the grant awards, its Spending Clause claim fails. *See New York v. DOJ*, 951 F.3d 84, 110 (2d Cir. 2020).

The Court should therefore grant Defendants' motion to dismiss the Second Amended Complaint (SAC), ECF No. 51, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). We thank the Court for its consideration.

| | |
|---|---|
| BRETT A. SHUMATE<br>Assistant Attorney General | Respectfully submitted,<br> S/ Syed Ahmad_____<br>SYED AHMAD (IL Bar 6217343) |
| ANDREW I. WARDEN<br>Assistant Branch Director | Trial Attorney, U.S. Department of Justice<br>202-307-2092; syed.n.ahmad@usdoj.gov |