UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CITY OF NEW YORK,<br><br>    *Plaintiff*,<br><br> v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    *Defendants*. | 25 Civ. 1510 (JHR) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

SYED AHMAD (IL Bar 6217343)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Washington, DC 20005
202-307-2092
syed.n.ahmad@usdoj.gov

*Attorneys for Defendants*

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

I.   The Court Lacks Jurisdiction Under the APA to Compel the Government to Pay Money Under a Contract ................................................................................................. 1

II.  Grant Funding Decisions Are Committed to Agency Discretion by Law ........................ 4

III. FEMA Has Not Taken Final Agency Action to Withhold the Disputed $80 Million ....... 5

IV.  Plaintiff Fails to State a Claim That Defendants Have Acted Contrary to Law, Ultra Vires, or in Excess of Statutory Authority ......................................................................... 6

V.   Plaintiff's Constitutional Claims Should Be Dismissed .................................................... 8

     A.   Plaintiff's Fifth Amendment Claim Fails (Count 6) ............................................. 8

     B.   The Separation of Powers (Count 7) and Spending Clause (Count 8) Claims Fail ................................................................................................................................. 10

CONCLUSION ............................................................................................................................ 11

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c) ........................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Aguayo v. Richardson*,
　473 F.2d 1090 (2d Cir. 1973) .................................................................................................. 9

*Am. Ass'n of Univ. Professors v. U.S. DOJ*,
　No. 25-cv-2429, 2025 LEXIS 114591 (S.D.N.Y. June 16, 2025), *appeal filed*, No. 25-1529
　(2d Cir. June 18, 2025) ............................................................................................................ 5

*Anderson Nat'l Bank v. Luckett*,
　321 U.S. 233 (1944) ................................................................................................................. 9

*Appalachian Voices v. EPA*,
　No. 25-cv-3657, 2025 LEXIS 143147 (S.D.N.Y. July 25, 2025), *appeal filed*, No. 25-1905
　(2d. Cir. Aug. 6, 2025) ............................................................................................................. 3

*Bennett v. Spear*,
　520 U.S. 154 (1997) ................................................................................................................. 8

*Block v. Cmty. Nutrition Inst.*,
　467 U.S. 340 (1984) ................................................................................................................. 7

*Bowen v. Massachusetts*,
　487 U.S. 879 (1988) ................................................................................................................. 3

*Chi. Women in Trades v. Trump*, No. 25-cv-2005, 2025 LEXIS 87121 (N.D. Ill. May 7, 2025)
　*appeal filed*, No. 25-2144 (7th Cir. July 3, 2025) ............................................................. 10, 11

*City of East St. Louis v. Cir. Ct. for the Twentieth Jud. Cir., St. Clair Cnty.*,
　986 F.2d 1142 (7th Cir. 1993) ................................................................................................. 9

*Climate United Fund v. Citibank, N.A.*,
　No. 25-5122, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025) ............................................ 1, 4, 11

*Collins v. Yellen*,
　594 U.S. 220 (2021) ............................................................................................................... 10

*City & Cnty. of San Francisco v. Trump*,
　897 F.3d 1225 (9th Cir. 2018) ............................................................................................... 10

*Dalton v. Specter*,
　511 U.S. 462 (1994) ............................................................................................................... 10

*Dep't of Educ. v. California*,
　145 S. Ct. 966 (2025) ........................................................................................................... 1, 2

*Fuld v. Pal. Liberation Org.*,
   606 U.S. 1 (2025) .................................................................................................................. 9

*Glob. Health Council v. Trump*,
   Nos. 25-5097, 25-5098, 2025 WL 2480618 (D.C. Cir. reissued Aug. 28, 2025) .................. 7, 11

*Hadwan v. U.S. Dep't of State*,
   139 F.4th 209 (2d Cir. 2025) ............................................................................................... 10

*In re Fairfield Sentry Ltd.*,
   147 F.4th 136 (2d Cir. 2025) ................................................................................................. 6

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ......................................................................................................... 4, 5

*Loc. 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Hungtington*,
   31 F.3d 1191 (2d Cir. 1994) ................................................................................................ 10

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .............................................................................................................. 8

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) .............................................................................................. 2

*Metro. Transp. Auth. v. Duffy*,
   __ F. Supp. 3d __, 2025 LEXIS 101448 (S.D.N.Y. 2025) ...................................................... 1

*Nat'l Insts. of Health (NIH) v. Am. Pub. Health Ass'n*,
   606 U.S. ____, 2025 WL 2415669 (2025) ............................................................................. 1

*New York v. NSF*,
   No. 25-cv-4452, 2025 LEXIS 148779 (S.D.N.Y. Aug. 1, 2025) ........................................... 11

*Priests for Life v. HHS*,
   808 F.3d 1 (D.C. Cir. 2015) .................................................................................................. 3

*South Carolina v. Katzenbach*,
   383 U.S. 301 (1966) .............................................................................................................. 9

*Suburban Mortg. Assocs. v. U.S. Dep't of Hous. & Urb. Dev.*,
   480 F.3d 1116 (Fed. Cir. 2007) ............................................................................................. 9

*Thakur v. Trump*,
   No. 25-4249, 2025 LEXIS 21417 (9th Cir. Aug. 21, 2025) ................................................... 5

*Township of River Vale v. Town of Orangetown*,
   403 F.2d 684 (2d Cir. 1968) .................................................................................................. 8

*Trump v. Boyle*,
   No. 25A11, 2025 WL 2056889 (U.S. July 23, 2025) .................................................................. 3

*Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.*,
   No. 25-cv-1775, 2025 LEXIS 157774 (D.D.C. Aug. 14, 2025) ................................................. 4

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ................................................................................................................. 10

**Statutes**

5 U.S.C. § 701(a)(1) ......................................................................................................................... 7

5 U.S.C. § 702 ................................................................................................................................. 3

5 U.S.C. § 704 ............................................................................................................................. 3, 6

Dep't of Homeland Sec. Appropriations Act (DHS Act), 2023,
   Pub. L. No. 117-328, div. F, 136 Stat. 4459 (2022) .................................................................... 8

Dep't of Homeland Sec. Appropriations Act (DHS Act), 2024,
   Pub. L. No. 118-47, div. C, 138 Stat. 460 .................................................................................. 8

**Regulations**

2 C.F.R. Part 200 ............................................................................................................................. 4

2 C.F.R. § 200.340 ....................................................................................................................... 4, 5

31 C.F.R. § 210.6 ......................................................................................................................... 6, 7

Federal Government Participation in ACH,
   64 Fed. Reg. 17472 (Apr. 6, 1999) ............................................................................................. 7

Federal Government Participation in ACH,
   87 Fed. Reg. 42 (Dec. 30, 2021) ................................................................................................. 6

# ARGUMENT

Plaintiff's opposition fails to remedy the defects that Defendants identified in the motion to dismiss. *See* ECF Nos. 52-53. As explained further below, this case should be dismissed.

## I. The Court Lacks Jurisdiction Under the APA to Compel the Government to Pay Money Under a Contract

Plaintiff has failed to establish that this Court has jurisdiction over the Administrative Procedure Act (APA) claims. The Supreme Court's recent stays of district-court orders in similar grant cases based on jurisdictional concerns is controlling.

In *National Institutes of Health* (*NIH*) *v. American Pub. Health Ass'n*, 606 U.S. ___, 2025 WL 2415669, at *1 (2025), the Supreme Court concluded that the government was likely to succeed in showing that the Tucker Act provides the Court of Federal Claims — and not the district court — jurisdiction over suits involving APA claims about continued funding under federal grants. The Supreme Court reiterated the reasoning of *Department of Education v. California*, 145 S. Ct. 966 (2025), that the APA "does not provide the District Court with jurisdiction to adjudicate claims based on the research-related grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *NIH*, 2025 WL 2415669, at *1 (quotations omitted). Thus, the Supreme Court has now made doubly clear that challenges to agency "decisions terminating existing grants" — including challenges brought "under the [APA]"— "belong in the Court of Federal Claims[.]" *Id.* at *1-2 (Barrett, J., concurring); *see also Climate United Fund v. Citibank, N.A.*, No. 25-5122, 2025 WL 2502881, at *8 (D.C. Cir. Sept. 2, 2025) (under *California* and *NIH,* "district courts have no jurisdiction to hear claims that the federal government terminated a grant agreement arbitrarily").

By its rulings, which were not before the Court at the earlier TRO stage, the Supreme Court reaffirmed that a plaintiff's mere invocation of the APA and equitable relief makes no

1

difference regarding the applicability of the Tucker Act. Plaintiff urges the Court to follow its reasoning at the TRO stage where the Court concluded it had jurisdiction because Plaintiff asserted a "claim as a request for equitable relief, as opposed to a claim for money damages." Transcript, ECF No. 42, at 33. But a request for a declaratory judgment or injunction that effectively requires the government to perform "a contractual obligation to pay money" assertedly embodied in grant agreements is contractual relief in the nature of specific performance. *California*, 145 S. Ct. at 968 (quotation omitted). That is exactly what Plaintiff seeks here. And in this respect, Plaintiff's request for equitable relief is no different from the relief requested in — and thus cannot provide any basis to distinguish — *California* and *NIH*.

    The Second Amended Complaint (SAC) reinforces that the source of rights and the relief sought are contractual. The essence of the claims are: Plaintiff is entitled to its $80 million paid in error — but the payment was made under *the grants*; Plaintiff is entitled to have the website reflect the available amounts — but the amounts are based on what is available under *the grants*; Plaintiff should not provide more information for reimbursement — but it would be for reimbursement under *the grants*; and Plaintiff is entitled to continue to seek reimbursement — but again it would be under *the grants*. The Supreme Court and this Circuit recognize these types of claims — all based on *the grants* — are contractual disputes channeled to the Court of Federal Claims.

    Plaintiff challenges the applicability of *NIH* and *California* in part because neither "discuss the widely-followed two-part test articulated in *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)[,]" ECF No. 55 at 10. And yet ironically, Plaintiff fails to meaningfully address *Megapulse,* Defendants' Memorandum of Law explaining the lack of district court jurisdiction under the test, or the Second Circuit's precedents applying the test.

2

Plaintiff relies on *Bowen v. Massachusetts*, 487 U.S. 879 (1988). ECF No. 55 at 9-10. *Bowen*, however, did not involve the relevant APA limitation; it involved two separate provisions: (1) 5 U.S.C. § 702 precluding APA claims for "money damages," and (2) 5 U.S.C. § 704 precluding APA claims where there is another "adequate remedy in a court" for an agency action. *Bowen* held that a State's APA claim that certain services qualified for reimbursement under the Medicaid program was not a claim for "money damages," 487 U.S. at 891-901, and that a Tucker Act suit premised on an ostensibly money-mandating statute was not an alternative "adequate remedy," *id.* at 901-08. *Bowen* did not address the separate bar at issue here on suits "expressly or impliedly forbid[den]" by statutes like the Tucker Act. 5 U.S.C. § 702. Perhaps most important, *Bowen* involved a "statutory entitlement to payment," and not a grant. *See Appalachian Voices v. EPA*, No. 25-cv-1982, 2025 LEXIS 169472, at *30 (D.D.C. Aug. 29. 2025) (court rejects application of *Bowen*); *but see Am. Council of Learned Soc'ys v. McDonald*, No. 25-cv-3657, 2025 LEXIS 143147 (S.D.N.Y. July 25, 2025) (court retains jurisdiction to hear grant claims based on constitutional principles), *appeal filed*, No. 25-1905 (2d. Cir. Aug. 6, 2025). Here, Plaintiff has not identified any statutory right to the continued funding; instead, any right to federal funds — and any obligation to continue making those funds available — necessarily stems from the relevant contractual grant award.

Plaintiff attempts to diminish the precedential value of *NIH* and *California*, ECF No. 55 at 10-11, but the Supreme Court has made clear that interim stay orders "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, No. 25A11, 2025 WL 2056889, at *1 (U.S. July 23, 2025); *see Priests for Life v. HHS,* 808 F.3d 1, 25 (D.C. Cir. 2015) (Kavanaugh, J., dissenting from denial of rehearing en banc) (Supreme Court stay orders are "extremely strong signals"). The Supreme Court's reasoning and judgment in two similar

3

grant cases seeking the same relief under the APA is enough to decide this case.

Counts 1-5 should be dismissed.

## II. Grant Funding Decisions Are Committed to Agency Discretion by Law

Plaintiff's APA claims in Counts 2, 4, and 5 regarding the termination of grants are committed to agency discretion.[1] Plaintiff argues 2 C.F.R. Part 200 provides sufficient guidance to permit a court to review the decision, ECF No. 55 at 14-16, but Plaintiff is mistaken.

The operative language regarding the termination of the grants is contained in 2 CFR § 200.340, which states in relevant part:

> (a) The Federal award may be terminated in part or its entirety as follows:
> …
> (4) By the Federal agency … pursuant to the terms and conditions of the Federal award,[2] including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities.

Courts lack any "meaningful standard against which to judge" DHS's determination that funding a particular recipient or program does not effectuate the agency's priorities. *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). The Supreme Court made clear that judgments about whether a program "best fits the agency's overall policies" require "a complicated balancing . . . peculiarly within [the agency's] expertise." *Id.* at 193 (quotations omitted). Such discretionary and policy-laden decisions are not susceptible to judicial review. *Cf. Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.*, No. 25-cv-1775, 2025 LEXIS 157774, at *74 (D.D.C. Aug. 14, 2025) (in

---

[1] Plaintiff's claims regarding the withholding of funds, the pause in the grants, and the website are not at issue in this argument.

[2] This regulation further demonstrates Defendants' jurisdictional argument, that is, the termination is pursuant to the terms and conditions of the grant. *Climate*, 2025 WL 2502881, at *13 ("[b]ecause this claim perforce incorporates the grant agreements[,]" it supports court's conclusion that grant terminations must be heard in the Court of Federal Claims); *but see Metro. Transp. Auth. v. Duffy*, __ F. Supp. 3d __, 2025 LEXIS 101448, at *88 (S.D.N.Y. 2025) (court finds jurisdiction even after recognizing "a change in agency priorities [must] be set forth as a term and condition … to rescind the award based on a change in priority.").

rejecting due process challenge to grant termination, the court recognized that agency officials have "ample discretion to determine whether and how the program is no longer effectuating 'agency priorities'" (quotation omitted)); *Am. Ass'n of Univ. Professors v. U.S. DOJ*, No. 25-cv-2429, 2025 LEXIS 114591, at *46 (S.D.N.Y. June 16, 2025) (in discussing an objection to "repudiating antisemitism" as agency priority under 2 C.F.R. § 200.340(a)(4), the court stated that it was "not aware of authority for that particular limitation on agency priorities."), *appeal filed*, No. 25-1529 (2d Cir. June 18, 2025); *but cf. Thakur v. Trump*, No. 25-4249, 2025 LEXIS 21417, at *16 (9th Cir. Aug. 21, 2025) ("regulations provide a meaningful standard by which courts may review the agencies' exercise of discretion"), *petition for reconsideration pending*.

Although Plaintiff argues *Lincoln* supports its position, Plaintiff ignores the significant discretion afforded to agencies to choose, within the parameters set by Congress, exactly which programs and entities to fund from a general appropriation, such as the funding at issue here for costs associated with shelter and eligible services to noncitizen migrants. *See generally Lincoln*, 508 U.S. at 192-94. "Of course," this discretion is not unbounded because "an agency is not free simply to disregard statutory responsibilities[.]" *Id.* at 193. But within the wide discretion Congress afforded, the fact that a grantee receives an award at the outset does not preclude the agency from later determining that the award "no longer effectuates the program goals or agency priorities," 2 C.F.R. § 200.340(a)(4). Here, the policy decision to terminate grants previously awarded to Plaintiff is squarely committed to the discretion of DHS.

### III.   FEMA Has Not Taken Final Agency Action to Withhold the Disputed $80 Million

Three of the actions Plaintiff complains about — the withholding, the suspension letter, and the website posting[3] — are all "preliminary, procedural, or intermediate agency action[s]"

---

[3] Plaintiff's claim regarding the termination notice is not at issue in this argument.

5

that could be subject to review on the review of the final agency action.  5 U.S.C. § 704.

Plaintiff's actions demonstrate reimbursement involves interim steps.  The SAC acknowledges that Plaintiff submitted its requests for reimbursement in January 2025.  SAC ¶ 78.  In response, Plaintiff was informed that the requested amounts needed to be reduced.  *Id.* ¶ 80.  Plaintiff then resubmitted at the reduced amounts.  *Id.* ¶ 81.  After that, as Defendants contend, an error occurred and payment was made before additional information could be obtained.  Plaintiff contests that.  But the Court does not need to decide whether an error occurred; instead, the Court should recognize that the withholding of funds, the pause, and the website posting are all preliminary steps pending a final decision regarding the reimbursement.  Only once that final decision is made will there be a final agency action that is judicially reviewable.  Until then, counts 1, 3, and 5 should be dismissed.

### IV. Plaintiff Fails to State a Claim That Defendants Have Acted Contrary to Law, Ultra Vires, or in Excess of Statutory Authority

Plaintiff relies on the Automated Clearing House (ACH) rules to argue that there has been an APA violation.  Despite Plaintiff's citation from the Public Comment section, Federal Government Participation in ACH, 87 Fed. Reg. 42, 44 (Dec. 30, 2021), the regulation governing payment reversals, 31 C.F.R. § 210.6(f), does not require compliance with the ACH rules.

The regulatory subsection specifically states that it applies "[n]otwithstanding any provision of the ACH Rules[.]"  *Id.* § 210.6.  This provision sweeps away the ACH rules as a constraint on payment reversal decisions.  *In re Fairfield Sentry Ltd.,* 147 F.4th 136, 166 (2d Cir. 2025) ("notwithstanding clause just shows which of two or more provisions prevails in the event of a conflict") (quotation omitted).  Instead, 31 C.F.R. § 210.6(f) permits an agency to "reverse" an "erroneous entry" provided the agency "certif[ies] to the Service that the reversal complies with applicable law related to the recovery of the underlying payment" and the reversal meets the

6

ACH time limitations. *Id.* Moreover, nothing in the subsection points to providing any rights to the recipient; instead, it discusses the agency's responsibility to the bank (referred to as an "RDFI"). *Id.* Significantly, when the regulation was promulgated, the agency explained that "an erroneous entry is an entry that orders payment . . . not intended to be credited . . . by the originator." Federal Government Participation in ACH, 64 Fed. Reg. 17472, 17481 (Apr. 6, 1999). Based on the Secretary of Homeland Security directive of January 28, 2025, the $80 million payment was not intended by the agency head to be made. *See* SAC ¶ 90.

Regarding the Impoundment Control Act of 1974 (ICA), Plaintiff misconstrues Defendants' argument: it is not that the Plaintiff is seeking to enforce the ICA directly; instead, the ICA precludes judicial review by Plaintiff under the APA. 5 U.S.C. § 701(a)(1). The D.C. Circuit recently held that "the grantees have no cause of action to undergird their claim that the defendants have acted contrary to law by violating the ICA." *Glob. Health Council v. Trump*, Nos. 25-5097, 25-5098, 2025 WL 2480618, at *11 (D.C. Cir. *reissued* Aug. 28, 2025) (footnote omitted). The court acknowledged that the APA provides a general cause of action to address agency action, but reasoned that the ICA's complex scheme precludes APA review. *Id.* at *10-11. Congress may impliedly preclude some parties from seeking APA review by establishing a "complex and delicate" scheme that provides for judicial review only by others. *See Block* v. *Cmty. Nutrition Inst.*, 467 U.S. 340, 348 (1984). The ICA's political-branch procedures and specific judicial-review mechanism preclude Plaintiff's APA claim.

Plaintiff's claim asserting violations of the fiscal year 2023 and 2024 Appropriations Acts fares no better. Plaintiff argues that the zone-of-interests requirement does not apply because Plaintiff has sued under the APA, not the Appropriations Acts. ECF No. 55 at 22. But the "[t]he relevant statute" for zone-of-interests purposes "is the statute whose violation is the gravamen of

7

the complaint," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990), as confirmed "by reference to the particular provision of law upon which the plaintiff relies," *Bennett v. Spear*, 520 U.S. 154, 175–76 (1997). Here, the Appropriations Acts, not the APA cause of action, provide the reference point for the zone-of-interests analysis.

Nothing in the text or context of the Appropriations Acts protects the interests of a city government to receive federal funds. Plaintiff overstates its case that it "was of course one of the 'non-Federal entities' that Congress intended DHS to support by appropriating funds to DHS for exactly those purposes." ECF No. 55 at 23. The appropriations support CBP; the non-federal entities were simply the means to that end as evidenced by the text: "$800,000,000 shall be transferred to 'Federal Emergency Management Agency—Federal Assistance' to support sheltering and related activities provided by non-Federal entities, including facility improvements and construction, in support of relieving overcrowding in short-term holding facilities of [CBP]." Dep't of Homeland Sec. Appropriations Act (DHS Act), 2023, Pub. L. No. 117-328, div. F, 136 Stat. 4459, 4725, 4730 (2022); *see* DHS Act, 2024, Pub. L. No. 118-47, div. C, 138 Stat. 460, 593, 598. The fact the agency may allocate some of its appropriated funds to non-federal entities to achieve a federal objective is not sufficient to bring those entities within the appropriations' zone of interests. Plaintiff cites no authority for that sweeping proposition.

The Court should accordingly dismiss Counts 3 and 4.

**V.    Plaintiff's Constitutional Claims Should Be Dismissed**

A.    <u>Plaintiff's Fifth Amendment Claim Fails (Count 6)</u>

Plaintiff has no due process rights because a city government is not a "person" within the meaning of the Fifth Amendment. Plaintiff argues *Township of River Vale v. Town of Orangetown*, 403 F.2d 684 (2d Cir. 1968), controls, but that case addressed the status of a

8

municipal corporation under the Fourteenth Amendment. The Due Process Clause of the Fifth Amendment and the Fourteenth Amendment do not provide identical protections. *Cf. Fuld v. Pal. Liberation Org.*, 606 U.S. 1, 16 (2025) (the Fourteenth Amendment minimum contacts standard are not imported into the Fifth Amendment). Despite Plaintiff's claim, there is no controlling Second Circuit precedent. Notably, when directly confronted with the question, the Second Circuit expressed doubt that a city could be a "person" for purposes of the Fifth Amendment. *Aguayo v. Richardson*, 473 F.2d 1090, 1100-1101 (2d Cir. 1973) (the question "was [not] necessarily foreclosed" by *South Carolina v. Katzenbach*, 383 U.S. 301, 323-324 (1966), but "it may be difficult to see how a city can be a 'person' if its progenitor is not"). The Court should accordingly follow cases holding that Plaintiff is not a person under the Fifth Amendment. *See, e.g.*, *City of East St. Louis v. Cir. Ct. for the Twentieth Jud. Cir., St. Clair Cnty.,* 986 F.2d 1142, 1144 (7th Cir. 1993).

Even if the Due Process Clause were to apply, Plaintiff does not dispute that it has no protected property interest in continued grant payments. Plaintiff asserts only an interest in its retrospective reimbursement claim. ECF No. 55 at 24-25. Plaintiff, however, does not explain how this claim is truly independent of its contract claim, particularly where the grant agreements themselves allegedly create the substantive right to reimbursement and dictate what process the government must follow. *See Suburban Mortg. Assocs. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1127-28 (Fed. Cir. 2007) ("We agree with the Government that a claim that a government agency has violated a party's right to due process by refusing performance under a contract is substantively indistinguishable from a breach of contract claim."). Nor has Plaintiff shown that it has a constitutionally protected property interest. *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 240 (1944), to which Plaintiff cites, addresses neither point. This Circuit has made

9

clear that a contract right does not create such an interest. *Loc. 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Hungtington*, 31 F.3d 1191, 1195 (2d Cir. 1994) (did not recognize a protected interest based on "a simple contractual right to receive . . . payments").

Plaintiff misreads *Hadwan v. U.S. Department of State*, 139 F.4th 209 (2d Cir. 2025). While the Court of Appeals did not require Hadwan to raise a "due process claim" with the agency before the court could address the issue, that is because Hadwan had "properly exhausted the full set of available administrative review procedures." *Id.* at 227 (quotation omitted). Here, Plaintiff has failed to exhaust the process offered by the agency and cannot be heard to complain about a lack of constitutionally sufficient process.

B.  <u>The Separation of Powers (Count 7) and Spending Clause (Count 8) Claims Fail</u>

Plaintiff has failed to distinguish *Dalton v. Specter*, 511 U.S. 462 (1994). Ultimately, in order for a constitutional challenge of separation of powers to lie, the challenged action must be done under the authority of the Constitution, *see, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or based on an unconstitutional statute, *see, e.g.*, *Collins v. Yellen*, 594 U.S. 220 (2021). The former is inapplicable because Plaintiff's claim is entirely statutory and the latter because Plaintiff does not claim that the at-issue appropriations are unconstitutional.

Plaintiff points to *Cty. of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018), which did not even address *Dalton*. Plaintiff's reliance on *Chicago Women in Trades v. Trump*, No. 25-cv-2005, 2025 LEXIS 87121 (N.D. Ill. May 7, 2025), *appeal filed*, No. 25-2144 (7th Cir. July 3, 2025), is unavailing because the court's analysis is unpersuasive. The court merely reviewed the relevant statute to determine whether Congress had granted the relevant authority to the Executive. *Id.* at *5. Once it concluded that there was no statutory authority, it reasoned that the lack of authority necessarily rendered the Executive's action unconstitutional. *Id.* That logic,

however, cannot withstand *Dalton* as it converts statutory claims against the Executive into constitutional ones.

As Plaintiff acknowledged, in *Global Health Council*, the D.C. Circuit recently found that the grantees lacked "a cause of action," specifically finding that the separation of powers challenges "are foreclosed" by *Dalton*. *Glob. Health Council*, 2025 WL 2480618, at *6. The court noted that *Dalton* establishes the framework to determine "whether the underlying claim is properly characterized as statutory or constitutional." *Id.* Here, where Plaintiff's alleged constitutional violation turns entirely on whether DHS has a statutory basis for its actions, no constitutional issue is presented. *See Climate*, 2025 WL 2502881, at *10 (citing cases); *New York v. NSF*, No. 25-cv-4452, 2025 LEXIS 148779 (S.D.N.Y. Aug. 1, 2025) (challenge on directives and grants was statutory, not constitutional, under *Dalton*).

Finally, Plaintiff fails to even address Defendants' argument regarding the Spending Clause, fittingly revealing that Count 8 fails to state a claim upon which relief may be granted.

## CONCLUSION

Defendants respectfully request the Court dismiss the SAC with prejudice for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)

I certify that this Reply Memorandum contains 3,498 words and conforms to the 3,500 word limit set by Local Civil Rule 7.1 and the Individual Rules and Practices in Civil Cases.

Dated: September 12, 2025

S/ Syed Ahmad
Syed Ahmad (IL Bar 6217343)
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
Washington, DC 20005
202-507-6075
syed.n.ahmad@usdoj.gov

11