

**Muriel Goode-Trufant**
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**JOSHUA P. RUBIN**
Senior Counsel
Affirmative Litigation Division
Phone: 212-356-2269
Fax: 212-356-2038
email:jrubin@law.nyc.gov

February 10, 2026

**VIA ECF**

Hon. Jennifer H. Rearden, U.S.D.J.
United States District Court
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re:   City of New York v. Trump et al., 25-cv-1510**

Dear Judge Rearden,

      I write on behalf of plaintiff the City of New York ("City" or "Plaintiff") in the above captioned matter to address several points raised in Defendants' letter of January 23, 2026 (ECF No. 60) ("Def. Letter"), submitted in connection with Defendants' motion to dismiss (ECF Nos. 52, 56).

## Applicability of Preliminary Injunction

      Defendants acknowledge that the preliminary injunction granted in *City of Chicago et al. v. U.S. Dep't of Homeland Security et al.*, 25-cv-5463, (Kennelly, J) ("*Chicago v. DHS*") applies here. Def. Letter at 1. *See Chicago v. DHS*, 2025 U.S. Dist. LEXIS 215014 (*see also* ECF Nos. 58, 59, 67 filed in that case).[1] That action, like this one, challenges Defendants' suspension, withholding and freezing of funds, and subsequent termination of the Shelter and Services Program ("SSP") for FY2023 and FY2024. Plaintiffs there sought the preliminary injunction ("Chicago PI") against Defendants' suspension of SSP and withholding of SSP funds set forth in a March 11, 2025 "Remedy for Noncompliance" letter that Defendants sent to each of the *Chicago v. DHS* plaintiffs ("March 11 Letters") and Defendants' full termination of SSP set forth in April 1, 2025 termination letters ("April 1 Letters") that each plaintiff also received. Further, Defendants are now subject to an Opinion and Order that granted in part the *Chicago v. DHS*

---

[1] In a companion decision, the court ruled that the Chicago PI applies to all SSP grantees, not just plaintiffs in that case, consistent with the court's power to issue a vacatur under the Administrative Procedure Act. *Chicago v. DHS*, ECF No. 67 (Nov. 13, 2025) (filed herewith).

plaintiffs' motion to enforce the Chicago PI. *Chicago v. DHS*, ECF No. 86 (filed Feb. 9, 2026) ("Chicago Enforcement Order," copy filed herewith, discussed more fully below).

Under the Chicago PI, Defendants are "enjoined from:

(a) eliminating or terminating the Shelter and Services Program as created in the 2023 and 2024 Congressional appropriations; and

(b) withholding FY2023 and FY2024 Shelter and Services Program funding for the reasons identified in the March 11 and April 1 Letters . . ."

*Chicago v. DHS*, ECF No. 59 (Nov. 3, 2025) (copy filed herewith).

The Chicago PI thus enjoins defendants from withholding the amount of $80,481,861.42, which Defendants are withholding for reasons identical to the reasons set forth in the March 11 Letters. In their February 18, 2025 "Remedy for Noncompliance" letter to the City ("February 18 Letter"), Defendants expressly stated that those funds were being "temporarily withheld" pending further review for the reasons set forth therein: "This action includes the amount of funding . . . that DHS/FEMA recently clawed back." ECF 9-20. Those reasons were the same as those set forth in Defendants' March 11 Letters to the *Chicago v. DHS* plaintiffs. *Compare* ECF 9-20 (Feb. 18 Letter) with *Chicago v. DHS*, ECF No. 28-1 Ex. 1 (March 11 Letter) (filed herewith, see .pdf p. 6). Accordingly, the Chicago PI prohibits withholding the clawed-back funds and compels their release to the City, along with the continued administration of the SSP.

Indeed, the Chicago Enforcement Order makes clear that, pursuant to 2 C.F.R. 200.305(b)(3), Defendants were required to reimburse SSP grantees on their pre-termination reimbursement requests at the latest within 30 days of receiving the reimbursement request or explain why such reimbursement requests were improper. Chicago Enforcement Order at 6. In holding that Defendants violated the Chicago PI, the *Chicago v. DHS* court concluded, "more than 30 days have passed since the Court vacated DHS's original rationale for withholding these payments." *Id.* The *Chicago v. DHS* Court thus "exercised its equitable authority to enforce its orders" and compelled Defendants to, by February 23, 2026, process "all reimbursement requests submitted before an SSP grant was terminated or articulate to the SSP grantees a "reasonable belief" that a reimbursement request is improper for reasons other than those set forth in the March 11 and April 1 Letters. Chicago Enforcement Order at 13, 14. Here, the amount of $80,481,861.42 constitutes a pre-termination reimbursement request, a request that has been pending more than 30 days since the Chicago PI was issued. It is therefore subject to the Chicago PI and the Chicago Enforcement Order.[2]

### Application to the Motion to Dismiss

*Chicago v. DHS* also provides support for several of the City's positions on the motion to dismiss, both as to jurisdiction and on the substance of the City's pleading. First, the *Chicago v.*

---

[2] The Chicago Enforcement Order notes that "ordering the government to comply with the relevant regulations does not dictate payment and does not amount to an order to pay," and is within the district court's jurisdiction. Chicago Enforcement Order at 12.

*DHS* court, applying the Supreme Court's recent emergency orders in *NIH* and *California*,[3] held that it had jurisdiction under the Administrative Procedure Act ("APA") to hear plaintiffs' challenge to the suspension and termination of SSP. The court held that it does not have jurisdiction "to the extent [plaintiffs] challenge the termination of their grants," but that it did have jurisdiction over the plaintiffs' claims to the extent they challenge the government's decision to freeze funding and terminate the program. *Chicago v. DHS*, 2025 U.S. Dist. LEXIS 215014 *34-35. The court distinguished between termination of a recipient's *grant*, which that court reasoned is covered by the Tucker Act, and termination of an entire grant *program*, which is cognizable as an APA challenge in the District Court. *Chicago v. DHS*, 2025 U.S. Dist. LEXIS 215014 *34-39. "[E]njoining the government from relying on its stated reasons to withhold payment would be exactly the type of relief the Supreme Court affirmed in *Bowen*." *Id.* at *35 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)); *see also* Chicago Enforcement Order at 12 (district court has jurisdiction to order government to comply with relevant regulations).

For the reasons set forth in *Chicago v. DHS*, this Court similarly has jurisdiction to decide the City's claims challenging the suspension of SSP, withholding of funds, and termination of the program. *See also State of Washington v. U.S. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 207342 (W.D. WA, Oct. 21, 2025) (District court has jurisdiction except for challenges to past grant terminations); *Ass'n of Am. Univs. v. DOD*, 2025 U.S. Dist. LEXIS 201095 (D. MA Oct. 10, 2025) (Tucker Act does not bar District Court from hearing cases challenging adoption of policies, even if those policies affect payments under grants). As the City's Second Amended Complaint sets forth, the April 1 Letters implemented Defendants' earlier decision to terminate SSP program-wide. ECF 50 ¶¶ 180-85.

Cases cited in Defendants' letter do not support a different result. *Neeta Thakur v. Trump*, 2025 U.S. App. LEXIS 33618 (9th Cir. 2025) concerned the termination of specific grant awards to researchers, rather than, as with SSP, termination of a program. Likewise, *Sustainability Inst. Rural Advancement Found. Int'l-USA v. Trump*, 2026 U.S. App. LEXIS 1431 (4th Cir. Jan. 21, 2026) does not address termination of a grant program, but only termination of specific grants to specific recipients. 2026 U.S. App. LEXIS 1431 at * 5-6.

Second, the Chicago PI lends considerable support to the merits of the City's claims and counsels against dismissal. The *Chicago v. DHS* court found that plaintiffs were likely to succeed on many of the claims the City raises here. On separation of powers, the court held that the "Executive Branch likely infringed on Congress's power to legislate and appropriate funds." 2025 U.S. Dist. LEXIS 215014 at * 51. It held that the "language of the [SSP] appropriations enactments does not give the agency the discretion it would have under a lump sum appropriation." *Id.* at *52-53. It rejected the broad reading of 2 C.F.R. § 200.340(a)(4) that Defendants claim here, holding "that section does not permit the agency to decline to follow a statute simply because its priorities have changed." *Id.* at * 55-56. *See also* Chicago Enforcement Order at 3 (plaintiffs likely to succeed on claims that the reasons articulated for freezing SSP funds and terminating SSP were arbitrary and capricious).

---

[3] *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025); *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025).

Finally, Defendants' reliance on *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 2025 U.S. LEXIS 2799 (2025) is misplaced. That case concerned an APA claim seeking to compel the executive branch to obligate funds that had been appropriated for a specified purpose. The Supreme Court granted defendants' emergency application to stay a preliminary injunction that mandated that the funds be obligated. The Supreme Court expressed the "preliminary view" that the Impoundment Control Act ("ICA") precluded claims under the APA to mandate the obligation of funds. Here, by contrast, the funds were already obligated and, in fact, a portion of those obligated funds had been approved by Defendants for payment and paid to the City before they were taken back. As this Court previously found, the SSP funds remain "available to satisfy obligations" to the City and cannot be re-obligated or exhausted before September 30, 2029. ECF 45 at 38-41. *AIDS Vaccine* is inapposite here.

For all of these reasons, the City respectfully requests that the Court consider the Chicago PI Decisions in connection with the pending motion and deny the motion.

We thank the Court for its consideration.

Respectfully submitted,

Joshua P. Rubin
Senior Counsel

cc:    via ECF