IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, CITY AND COUNTY OF DENVER, and PIMA COUNTY,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY UNITED STATES FEDERAL EMERGENCY MANAGEMENT AGENCY, and DAVID RICHARDSON, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE UNITED STATES FEDERAL EMERGENCY MANAGEMENT AGENCY,<br><br>Defendants. | Case No. 25 C 5463 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The City of Chicago; the City and County of Denver, Colorado; and Pima County, Arizona have sued various government agencies and officials, challenging the government's decisions to freeze funding for and ultimately eliminate the Shelter and Services Program (SSP). The plaintiffs claim that the government's decisions are unconstitutional, ultra vires, and in violation of the Administrative Procedure Act (APA).

On June 20, 2025, the plaintiffs filed a motion for a preliminary injunction, asking the Court to order the government to unfreeze SSP funds and process pending and future SSP funding requests. The motion also asked the Court to preclude the

government from terminating the SSP and from withholding or terminating SSP grants. On October 31, 2025, the Court issued a decision granting the plaintiffs' motion in part. The Court concluded that the plaintiffs were likely to succeed on their claims that the government's decisions violated the separation of powers and were arbitrary and capricious in violation of the APA. On November 3, 2025, the Court entered an order precluding the government from terminating the SSP or withholding SSP funds for the reasons challenged by the plaintiffs.

The plaintiffs have filed a motion asking the Court to enforce its November 2025 order. For the reasons below, the Court grants the plaintiffs' motion in part.

## Background

In 2022 and 2023, Congress appropriated funding in certain amounts to DHS / FEMA "to support sheltering and related activities provided by non-Federal entities, including facility improvements and construction, in support of relieving overcrowding in short-term holding facilities of U.S. Customs and Border Protection." Consolidated Appropriations Act, Pub. L. No. 117-328, Div. F, Title II, 136 Stat. 4459, 4730 (2022); Further Consolidated Appropriations Act, Pub. L. No. 118-47, Div. C, Title II, 138 Stat. 460, 598 (2024).

Chicago received five SSP grants: three direct grants, totaling over $38 million, and two pass-through grants awarded through the State of Illinois, totaling over $28 million. Dkt. no. 28, Ex. 5 ¶¶ 5–7, 20–22. Pima County received three direct grants, totaling over $52 million. Dkt. no. 28, Ex. 2 ¶ 15. Denver received three direct grants, totaling $32 million. Dkt. no. 28, Ex. 4 ¶¶ 6–9. DHS / FEMA determined that the SSP grants were reimbursement grants with a funding hold for the full amount awarded. Dkt.

2

no. 28, Ex.1 ¶ 7.  This required the SSP grantees to submit a detailed cost breakdown, justification for the cost items, and required supporting documentation before DHS / FEMA would issue reimbursement for the relevant costs a grantee incurred.  *Id.*  From December 2024 through February 2025, the plaintiffs submitted five reimbursement requests related to their SSP grants, and the State of Illinois submitted one on Chicago's behalf under a pass-through grant, seeking reimbursement of approximately $55 million.  Dkt. no. 28, Ex. 1 ¶ 12, Ex. 2 ¶ 24, Ex. 4 ¶¶ 16, 20, Ex. 5 ¶ 18.  The government has not reimbursed the plaintiffs for any of these requests.

Instead, on March 11, 2025, the government informed grantees in a letter that it was temporarily withholding SSP payments because it had "significant concerns that SSP funding was going to entities engaged in or facilitating illegal activities."  *See* 2 C.F.R. § 200.339(a) (authorizing a federal agency to temporarily withhold payments if the grantee fails to comply with federal law and such noncompliance cannot be remedied by imposing specific conditions).  On April 1, 2025, the government sent a letter to grantees stating that SSP grants were terminated effective immediately based on the same concerns.

On October 31, 2025, the Court granted, in part, the plaintiffs' motion for a preliminary injunction.  *City of Chicago v. Dep't of Homeland Sec.*, No. 25 C 5463, 2025 WL 3043528, at *24 (N.D. Ill. Oct. 31, 2025).  The Court found that the plaintiffs were likely to succeed on their separation of powers and APA claims because the reasons articulated for freezing SSP funds and terminating the SSP in the March and April 2025 letters were arbitrary and capricious.  *Id.*  In its November 3, 2025 order, the Court enjoined the government from "withholding FY2023 and FY2024 Shelter and Services

3

Program funding for the reasons identified in the March 11 and April 1 letters." Prelim. Inj. Order at 2. The government did not appeal.

The government does not dispute that DHS / FEMA has not reimbursed any SSP grantee for reimbursement requests submitted before termination of the SSP grants. The plaintiffs have moved to enforce the Court's November 3, 2025 order or, alternatively, require compliance with 2 C.F.R. § 200.305(b)(3).

## Discussion

The plaintiffs assert that the government violated the Court's order in two ways: (1) by failing to process reimbursement requests that were submitted before the SSP grants were terminated, and (2) by failing to reopen the SSP portal for submission of additional requests. The Court addresses each in turn.

### A.      Processing pre-termination requests

The plaintiffs argue that the government violated the Court's order "by failing to respond to [p]laintiffs' reimbursement requests within 30 days." Pls.' Mem. of L. at 5. The government responds that it has not violated the Court's order because DHS is "review[ing] and reconcil[ing] all outstanding and allowable expenses incurred prior to grant termination in order to make a final grant payment to the grantees, which is expected in this case by April 1, 2026." Defs.' Resp. at 2–3.

Two federal regulations related to federal grant funding and administration are relevant to the parties' arguments. First, 2 C.F.R. § 200.305(b) governs the requirements for payments from a federal agency to a recipient of federal funds other than a state. Under this regulation, when a federal agency reimburses grantees for expenses, the federal agency "must make payment within 30 calendar days after receipt

4

of the payment request unless the Federal agency or pass-through entity reasonably believes the request to be improper." 2 C.F.R. § 200.305(b)(3).

Second, 2 C.F.R. § 200.344 sets out the closeout process that a federal agency and grantee must follow after a grant has been terminated. The regulation requires a grantee to submit "all reports (financial, performance, and other reports required by the Federal award) no later than 120 calendar days after the conclusion of the period of performance." 2 C.F.R. § 200.344(b). The regulation also requires the grantee to liquidate all financial obligations incurred under the Federal award no later than 120 calendar days after the conclusion of the period of performance. 2 C.F.R. § 200.344(c). Finally, the regulation provides that: "The Federal agency must make every effort to complete all closeout actions no later than one year after the end of the period of performance." 2 C.F.R. § 200.344(h). According to the government, the closeout process essentially requires a full accounting of the payments made to the grantee to determine whether, on net, the grantee owes the federal agency money or the federal agency owes the grantee.

The government does not dispute that it has not processed reimbursement requests submitted by SSP grantees between December 2024 and February 2025—months *before* the SSP grants were terminated in April 2025. At the time, DHS justified its decision to withhold reimbursement by informing the grantees that it believed the reimbursement requests in question were improper. DHS stated that it had "significant concerns that SSP funding [was] going to entities engaged in or facilitating illegal activities." *City of Chicago*, 2025 WL 3043528, at *24. DHS also informed the grantees that it was "concerned that entities receiving payment under SSP may be guilty of

5

encouraging or inducing" violation of federal criminal immigration laws. *Id.* The Court found that the plaintiffs were likely to succeed on their claims that these reasons for freezing SSP funds were arbitrary and capricious. *Id.* Based on this finding, among others, the Court enjoined the government from "withholding FY2023 and FY2024 Shelter and Services Program funding for the reasons identified in the March 11 and April 1 letters." Prelim. Inj. Order at 2.

The government informed the Court at oral argument that it would have done "nothing" differently if the Court had not entered its November 2025 order. Feb. 4, 2026 Transcript at 55. When asked what effect the Court's order had, the government replied that it may have precedential value in other cases but did not require DHS to take any action. *Id.* at 56. The Court disagrees. The order barred DHS from withholding SSP funding for the reasons it articulated in the March 11 and April 1 letters. Without that rationale, the agency has stated no reason for withholding funding for reimbursement requests submitted before the SSP grants were terminated in April 2025.

The Court thus concludes that, based on its November 3, 2025 order, the government was required to comply with 2 C.F.R. § 200.305(b)(3) by either reimbursing the SSP grantees or explaining why such reimbursement requests were improper[1] within 30 days of the order. There is no question that SSP reimbursement requests were submitted to DHS far more than 30 days ago, and more than 30 days have passed since the Court vacated DHS's original rationale for withholding these payments. The government has therefore violated the Court's November 2025 order and section §

---

[1] The government may no longer rely on the reasons articulated in its March 11 and April 1 letters to determine that the reimbursement requests are improper.

6

200.305(b)(3). To date, the government has taken no action to cure its violation and confirmed at oral argument that it does not intend to take any action.

The government instead pivots to a new argument: DHS is processing all outstanding SSP reimbursement requests—even those submitted months before SSP grants were terminated on April 1, 2025—through the closeout process. The government argues that the Court "left open the possibility that defendants could provide some alternative explanation to justify its actions" and "[t]hat is precisely what occurred here." Defs.' Resp. at 2. But the government confirmed at oral argument that DHS has not articulated any new reasons for withholding SSP funding. Instead, the "alternative explanation to justify its actions" the government now relies on is that "plaintiffs' SSP reimbursement claims for pre-termination work are being resolved through a termination closeout process." Id. In support of this contention, the government now argues that 2 C.F.R. § 200.344 supplants the payment requirements in 2 C.F.R. § 200.305(b)(3) after a grant is terminated. But the plain language of sections 200.344 and 200.305(b)(3) do not support the government's argument.

The closeout regulation—2 C.F.R. § 200.344—states that it "specifies the administrative actions required at the end of the period of performance." 2 C.F.R. § 200.344(a). The regulation addresses financial obligations in several subsections. First, the regulation requires the grantee to submit any financial reports required by the relevant grant. 2 C.F.R. § 200.344(b). Second, it requires the grant recipient to liquidate all financial obligations incurred under the grant. 2 C.F.R. § 200.344(c). Third, the regulation requires a grantee to promptly refund any unobligated funds that were paid but the grantee is not authorized to retain. 2 C.F.R. § 200.344(e). Fourth, the

7

federal agency is required to make adjustments to the federal share of costs after the closeout reports are received.  2 C.F.R. § 200.344(f).  Read as a whole, the regulation focuses on the reconciliation of obligations based on the closeout reports submitted and any outstanding obligations incurred after the grant is terminated.  It does not address—or even contemplate—the belated review and processing of reimbursement requests submitted months before the grant was terminated and the closeout process even began.

Reimbursement requests for costs incurred before grant termination are instead governed by 2 C.F.R. § 200.305(b)(3).  This regulation addresses the required process for payment from a federal agency to a recipient of federal funds.  Section 200.305(b)(3) expressly requires that, "[w]hen the reimbursement method is used, the Federal agency or pass-through entity must make payment within 30 calendar days after receipt of the payment request unless the Federal agency or pass-through entity reasonably believes the request to be improper."  2 C.F.R. § 200.305(b)(3).  The regulation does not include any indication that this requirement no longer applies if a federal agency has terminated the grant in question—and thus initiated the closeout process—months *after* a reimbursement request was submitted.  In other words, the regulation does not contemplate allowing a federal agency to escape its regulatory obligations simply because it later terminates a grant.

The government's position is also untenable because it would deprive grant recipients of meaningful judicial review of an agency's decision that a reimbursement request is improper.  *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22 (2018) ("The Administrative Procedure Act creates a basic presumption of judicial

review for one suffering legal wrong because of agency action.") (internal citations omitted)). The government's reading would allow DHS to avoid compliance with 2 C.F.R. § 200.305(b)(3). Whenever DHS wanted to withhold funds under section 200.305(b)(3) but did not want to articulate a reason why it thought such requests were improper, DHS could simply terminate the grant. It would then only have to comply with the closeout regulation. The closeout regulation—section 200.344—does not require the agency to explain why it is withholding funds or denying a reimbursement request. It does not address reimbursement requests at all. If this regulation displaces section 200.305(b)(3), DHS would never be required to articulate a reason that it believes a reimbursement request is improper. Instead, the agency could simply deny the reimbursement as part of the larger closeout process. Even if a grant recipient could later challenge the agency's final accounting, the record would lack any evidence of the agency's basis for concluding that particular reimbursement requests were improper. The government's proposed reading thus would deny SSP grantees the ability to meaningfully challenge the basis for the government's decision to withhold funds that they are entitled to under the statute.

The government's interpretation of the regulations also would allow DHS to avoid any set deadline for addressing reimbursement requests. The closeout regulation only encourages a federal agency to "make every effort to complete all closeout actions no later than one year after the end of the period of performance." 2 C.F.R. § 200.344(h). Section 200.305(b)(3), on the other hand, does provide grantees with a date certain that they will either receive payment or a reason that the agency believes that a payment request is improper. The government argues that these are conflicting timelines—30

9

days versus one year—that support its contention that the closeout regulation governs after a grant has been terminated.  But the regulations do not conflict.  The 30-day deadline in section 200.305(b)(3) applies to reimbursement requests incurred before a grant is terminated.  Section 200.344(c) provides a one-year goal for evaluating the payments already made during the grant performance period as well as any costs incurred for liquidation of obligations post termination.

The government says that it hopes—but does not promise—that the closeout process will conclude by April 1, 2026.  The government also apparently does not believe it is under any legal obligation to conclude the closeout process—or respond to the reimbursement requests that have been outstanding for over a year—by this date.  And at oral argument, the government conceded that it does not know what the plaintiffs' avenue for relief would be if the agency fails to complete the closeout process by April 1.  Without a decision on outstanding reimbursement requests, grantees are unable to challenge any new rationale that DHS may offer for withholding payment in either the district court or the Court of Federal Claims.  The government's reliance on the closeout regulation to ignore the Court's order and 2 C.F.R. § 200.305(b)(3) would simply keep grantees waiting without any practical opportunity to obtain meaningful judicial review.  *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) (explaining that given the Court's "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action," "it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review").  Thus the fact that SSP grants are currently in the closeout process does not excuse compliance with the Court's order, including by following the process set forth in section 200.305(b)(3).

This understanding of the regulatory structure explains why this Court has jurisdiction to enforce its order.  The government terminated the grants on April 1, 2025, purporting to cut off future contractual obligations to pay the plaintiffs.  Vacating that decision and ordering the government to pay would amount to "enforc[ing] a contractual obligation to pay money."  *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2661–62 (2025) (Barrett, J., concurring).  The Tucker Act vests the CFC with exclusive jurisdiction to hear such a challenge and order such relief.  *Id.*

But that is not what this Court ordered.  Instead, as discussed above, the Court precluded the government from withholding funds for *pre-termination* requests for the reasons identified in the March 11 and April 1 letters.  That leaves the government with no valid articulated reason for not processing those requests as required by 2 C.F.R. § 200.305(b)(3).  It follows that, absent a different reason for withholding funds, the government must process those requests under section 200.305(b)(3).  That is what the Court's order requires, and that is what the plaintiffs seek to enforce.

If the government were correct that terminating a grant absolved it of the obligation to follow 2 C.F.R. § 200.305(b)(3) for pre-termination requests, then requiring the government to adhere to section 200.305(b)(3) would, in effect, override that aspect of the grant termination decision.  But as explained above, the government's view is mistaken:  terminating a grant initiates closeout procedures but does not displace the payment processing requirements in section 200.305(b)(3) for reimbursement requests for costs incurred before grant termination.  As a result, the Court's order holding the government to section 200.305(b)(3) for pre-termination requests did not overrule the grant-termination decision.

11

Moreover, an order requiring the government to process reimbursement requests under 2 C.F.R. § 200.305(b)(3) is not "in every meaningful sense an order requiring the government to pay" money. *Id.* at 2664 (Gorsuch, J., concurring). The government can still deny the request if it reasonably determines that the request is improper following its review under section 200.305(b)(3). Conversely, the government may instead have no reasonable basis to determine that the request is improper and then would pay the reimbursement request. Thus ordering the government to comply with the relevant regulations does not dictate payment and does not amount to an order to pay. *Cf. Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) (distinguishing "specific performance of a *contractual* obligation to pay *past* due sums" from "an injunction to correct the method of calculating payments going forward").

This is equitable relief that the CFC lacks the authority to grant. *Richardson v. Morris*, 409 U.S. 464, 465 (1973). As a result, the Tucker Act does not displace this Court's jurisdiction to grant such relief. *See Tootle v. Sec'y of Navy*, 446 F.3d 167, 177 (D.C. Cir. 2006). And by the same token, the relief sought by the plaintiffs is not barred by APA section 702. *See Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025). The Court therefore has jurisdiction to enforce its order, which required compliance with 2 C.F.R. § 200.305(b)(3).

For these reasons, the Court concludes that the government has violated the November 3, 2025 order. After the Court vacated DHS's stated rationale for withholding funding for reimbursement requests, the agency no longer had any stated reason to withhold such funding. The order thus immediately precluded DHS from withholding SSP funds based on the reasons it previously articulated. At that point, the 30-day

12

deadline for processing reimbursement requests—set in 2 C.F.R. § 200.305(b)(3)—had already come and gone. Reading the order in the light most favorable to the government, it reset the 30-day clock under section 200.305(b)(3) for processing the reimbursement requests submitted months earlier.

DHS was required to either process the requests or state a reasonable belief that it thought the request was improper—that did not rely on the reasons vacated by the Court—no more than 30 days after entry of the order. Now more than 90 days—three times 30—have passed since the Court vacated DHS's rationale for withholding SSP funding. And it has now been a full year since the plaintiffs submitted the reimbursement requests at issue. In short, DHS's 30-day deadline came and went long ago. The Court thus exercises its equitable authority to enforce its orders and requires that DHS finally comply with its regulatory and Court-ordered obligations within fourteen days. *See Degen v. United States*, 517 U.S. 820, 827 (1996) (explaining that "[a] federal court has at its disposal an array of means to enforce its orders," including "by inherent authority"). By February 23, 2026, the government must comply with the Court's order by processing, pursuant to section 200.305(b)(3), all reimbursement requests submitted before an SSP grant was terminated. And if the government determines it has a reasonable belief—that does not rely on the reasons set forth in the March 11 and April 1 letters—that a reimbursement request is improper, it must articulate such reason(s) to the SSP grantee within that same deadline.

**B.      Payment portal**

The plaintiffs also argue that the government has violated the Court's order by failing to reopen the online payment portal to allow for submission of additional

13

reimbursement requests. The plaintiffs confirmed at oral argument, however, that their motion seeks relief only for reimbursements requests submitted before the grants were terminated in April 2025. The plaintiffs worry that they will not be able to use the portal to request reimbursement for other costs if the government rejects reimbursement for certain requests already submitted. Although this may become an issue in the future, it is not a ripe dispute before the Court today. The Court therefore declines, at this time, to order the government to reopen the payment portal.

## Conclusion

For the reasons stated above, the Court grants, in part, the plaintiffs' motion to enforce the Court's November 3, 2025 order [dkt. no. 74]. By February 23, 2026, the government must comply with the Court's order by processing, pursuant to 2 C.F.R. § 200.305(b)(3), all reimbursement requests submitted before an SSP grant was terminated. And if the government determines it has a reasonable belief—that does not rely on the reasons set forth in the March 11 and April 1 letters—that a reimbursement request is improper, it must articulate such reason(s) to the SSP grantee.

On a separate note, a joint status report with a proposed schedule for any further proceedings that are needed to bring this case to a conclusion is to be filed on February 25, 2026. The case is set for a telephonic status hearing on February 27, 2026 at 9:10 AM, using call-in number 650-479-3207, access code 2305-915-8729.

Date: February 9, 2026

_____
MATTHEW F. KENNELLY
United States District Judge