The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

    Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

    Defendants.

NO. 2:25-cv-1401-BJR

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Before the Court are Plaintiff State of Washington's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment.[1] Dkt. Nos. 20, 24. This case concerns Defendants' decision to pause, withhold, and ultimately terminate the Shelter and Services Program ("SSP"). SSP is a Federal Emergency Management Agency ("FEMA")-administered program funded by Congress to support sheltering and related services provided by non-federal entities to

---

[1]Defendants are the United States Department of Homeland Security ("DHS"); Kristi Noem, in her official capacity as Secretary of DHS; the Federal Emergency Management Agency ("FEMA"); and David Richardson, in his official capacity as the Senior Official Performing the Duties of the FEMA Administrator. Since this lawsuit was filed, Markwayne Mullin has replaced Kristi Noem as Secretary of DHS. Although the parties have not formally substituted Secretary Mullin for former Secretary Noem, substitution is automatic under Federal Rule of Civil Procedure 25(d).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 1

noncitizens released from the custody of the United States Department of Homeland Security ("DHS"). Washington received an SSP grant and challenges Defendants' termination decision as arbitrary and capricious, contrary to law, *ultra vires*, and unconstitutional. Defendants respond that the Tucker Act deprives this Court of jurisdiction. They also argue that they acted within their statutory and regulatory authority when they terminated SSP because Congress gave FEMA discretion over the appropriated funds and federal regulations permitted termination of awards that no longer effectuate current DHS priorities. Having reviewed the parties' briefing, the administrative record, and the relevant legal authority, the Court grants Washington's motion in part and denies Defendants' cross-motion. The Court's reasoning follows.

## II.  BACKGROUND

### A.  The Shelter and Services Program

Beginning in 2019, Congress made funds available through FEMA's Emergency Food and Shelter Program for humanitarian relief to communities assisting noncitizens released from DHS custody. Those funds were to be distributed to "jurisdictions or local recipient organizations serving communities that have experienced a significant influx of such aliens." Emergency Supplemental Appropriations for Humanitarian Assistance and Security at the Southern Border Act, 2019, Pub. L. No. 116-26, tit. III, 133 Stat. 1018, 1020–21 (2019); *see also* American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 4008, 135 Stat. 4, 79 (2021); Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, div. F, § 543(a)(3), 136 Stat. 49, 345 (2022). The funds were administered through the Emergency Food and Shelter Program–Humanitarian ("EFSP-H"), under which FEMA provided funds to the Emergency Food and Shelter Program National Board, which in turn issued

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 2

grants to service providers. *See* FEMA, Shelter and Services Program, Fiscal Year 2023 Report to Congress at 2 (Oct. 18, 2023).

In 2023, Congress directed FEMA and U.S. Customs and Border Protection ("CBP") to transition from EFSP-H to the new Shelter and Services Program ("SSP"). *See* Joint Explanatory Statement Regarding H.R. 2617, Consolidated Appropriations Act, 2023, 117 Cong. Rec. S8553, S8557–58 (2022). Congress appropriated SSP funds "to support sheltering and related activities provided by non-Federal entities, including facility improvements and construction, in support of relieving overcrowding in short-term holding facilities of [CBP]." Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, div. F, tit. II, 136 Stat. 4459, 4730 (2022). Congress again funded SSP in 2024 and appropriated $650 million for the program. Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. C, tit. II, 138 Stat. 460, 598 (2024).

In 2024, FEMA made approximately $341 million available in SSP funds through a competitive grant process. FEMA's Notice of Funding Opportunity stated that the funds were made available, "[a]s directed by Congress," to allow "non-federal entities to offset allowable costs incurred for services associated with noncitizen migrants recently encountered and released by DHS[,]" and identified SSP's primary purpose as "to reliev[e] overcrowding in short-term holding facilities of [CBP]." Dkt. 18-2 at FEMA_AR_000005. Eligible services included meals, lodging, acute medical care items, transportation, and personal hygiene supplies. *Id*. at FEMA_AR_000006. The SSP performance period ran from October 1, 2023, through September 30, 2026, and recipients could seek reimbursement for allowable costs incurred during that period. *Id*. at FEMA_AR_000007.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 3

### B.    Washington's SSP Award

Washington applied for SSP funds on June 13, 2024. Dkt. 18-3 at FEMA_AR_000081. In support of its application, Washington explained it had seen a "significant increase in the number of migrants and asylum seekers" who had been recently released from DHS and who enter Washington's already "over capacity" housing and homeless crisis response system. Dkt. 18-4 at FEMA_AR_000089. It asserted that SSP funds would assist it in providing shelter and related services to these individuals. FEMA awarded Washington $4,039,516 in SSP funds. Dkt. 18-6 at FEMA_AR_000118. The award was intended to reimburse eligible costs incurred by Washington and its subrecipients in providing services to eligible noncitizen migrants. Washington represents that, before Defendants terminated the SSP award, Washington and its intended subrecipients had already provided services that would have been reimbursable under the award.

### C.    The Administration's Review of Federal Funding and SSP

On January 20, 2025, President Trump issued Executive Order 14159, titled "Protecting the American People Against Invasion." Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 29, 2025). Among other things, the Executive Order directed federal agencies to ensure that federal funds were not used in a manner that, in the Administration's view, would support or provide services to removable or unlawfully present noncitizens. It also directed "the Attorney General and the Secretary of [DHS]" to "evaluate and undertake any lawful actions to ensure that so-called 'sanctuary' jurisdictions …do not receive access to Federal funds." *Id*. at Sec. 17.

On January 28, 2025, Secretary Noem directed DHS components and offices to review certain grant programs and to pause funding for grants that were available to nonprofit organizations and touched on immigration. Secretary Noem specifically identified SSP as subject to the funding

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 4

hold. On February 10, 2025, FEMA de-obligated more than $885 million in previously awarded SSP funds, including Washington's full $4,039,516 award. On February 14, 2025, FEMA issued Grant Processing Guidance placing SSP grants on hold pending compliance review and prohibiting any "new obligation, disbursement or payment of funds previously obligated." Dkt. 15, Ex. 6 at 2.

On February 19, 2025, Secretary Noem issued a memorandum directing DHS components to review federal financial assistance awards to determine whether DHS funds were going, directly or indirectly, to "sanctuary jurisdictions" and to cease providing federal funding to such jurisdictions identified through that process. Dkt. 18-8 at FEMA_AR_000176-77. FEMA thereafter reviewed its grant programs and, on March 20, 2025, recommended that DHS place conditions or restrictions on certain programs and review SSP for termination because, in FEMA's view, the program did not align with Administration and Secretary priorities concerning nongovernmental organizations, immigration, and sanctuary jurisdictions. Dkt. 19-2 at FEMA_AR_000219–27. Secretary Noem approved FEMA's recommendations on March 25, 2025. *Id*. at FEMA_AR_000221–22.

### D.    FEMA's March 11, 2025 Letter to Washington

Before Secretary Noem approved FEMA's March 20 recommendation, FEMA sent Washington a letter dated March 11, 2025. In that letter, FEMA stated that it had "significant concerns that SSP funding is going to entities engaged in facilitating illegal activities" and that FEMA was temporarily withholding payments under Washington's SSP award pursuant to 2 C.F.R. § 200.339(a). Dkt. 18-9 at FEMA_AR_000178–79. FEMA also imposed "specific conditions" pursuant to 2 C.F.R. § 200.208, including additional monitoring and review of Washington's award. *Id*.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 5

FEMA directed Washington not to incur additional costs under the grant until further notice. *Id*. at FEMA_AR_000179. FEMA also required Washington to provide information concerning the individuals served under the award and to submit affidavits attesting that neither the State nor its subrecipients had knowledge or suspicion that SSP funds had been used in violation of 8 U.S.C. § 1324. *Id*. FEMA gave Washington 30 days to respond to the information request and 60 days to appeal the withholding decision. *Id*.

### E.   Termination of Washington's SSP Award

On April 1, 2025, before Washington's deadline to respond to FEMA's March 11 information request or to appeal the withholding decision had expired, FEMA issued a notice terminating Washington's SSP award. Dkt. 18-11 at FEMA_AR_000185-86. FEMA stated that funding non-federal entities to provide shelter, food, transportation, acute medical care, and hygiene supplies to individuals released from DHS short-term holding facilities was not consistent with DHS's current priorities because such individuals "often have no legal status and are in the United States unlawfully." *Id*. at FEMA_AR_000185. FEMA further stated that grant programs that support, or have the potential to support, illegal immigration through funding illegal activities or support for "illegal aliens" do not effectuate DHS's current priorities. *Id*.

The termination notice instructed Washington to close out its SSP award. *Id*. at FEMA_AR_000186. The notice also provided that FEMA would determine final allowable costs by evaluating submitted costs incurred before March 11, 2025. *Id*. Washington submitted written objections on April 23, 2025, disputing that it had breached any SSP grant obligations and asserting that FEMA's withholding and termination decisions were unlawful. Dkt. 18-14 FEMA_AR_000191-92. Washington sent a further objection letter on July 28, 2025, reiterating its

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 6

objections and stating that it had complied with its SSP obligations and intended to seek reimbursement for allowable expenses. Dkt. 18-15 FEMA_AR_000193-94. On August 20, 2025, FEMA issued a final decision denying Washington's appeal. Dkt. 18-13 at FEMA_AR_000189. FEMA stated that its decision was not appealable and again directed Washington to submit closeout documentation. *Id*. On September 11, 2025, FEMA informed Washington that failure to submit closeout documents by October 13, 2025, could result in administrative closeout and a "material failure" finding that could affect FEMA's oversight of Washington's other current and future awards. Dkt. 18-18. Washington submitted the closeout materials on October 13, 2025, subject to its continuing objection that FEMA's actions had prevented it from fully using the award and preparing reimbursement materials. Dkt. 22, Exs. A-B.

**F.      Procedural History**

Washington filed this action on July 25, 2025. Dkt. 1. On September 17, 2025, the Court granted the parties' joint stipulated motion and proposed case plan. Dkt. 12. Under that stipulated order, Defendants agreed that the $4,039,516 in SSP funds awarded by FEMA to Washington "may not be obligated to another entity or potential grantee" and "will remain available through 9/30/2029, to satisfy obligations, if any, to Washington under its grant." *Id*. In light of that agreement, Washington agreed not to seek a preliminary injunction, while reserving its right to do so if the status of the fiscal year 2024 SSP funds changed. *Id*.

Washington filed the operative Amended Complaint on September 22, 2025. Dkt. 15. Washington alleges that Defendants' decision to pause, withhold, and terminate SSP violates the Administrative Procedure Act ("APA"), the Separation of Powers doctrine, and the Spending Clause, and that Defendants acted *ultra vires*. Dkt. 15 ¶¶ 103–37. Washington seeks declaratory

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 7

and injunctive relief, including an order declaring unlawful Defendants' decision to pause, withhold, or terminate SSP; enjoining Defendants from terminating the Program or withholding SSP funds based on that decision; and vacating and setting aside Defendants' challenged actions. *Id*. ¶¶ 138–43. The parties' cross-motions for summary judgment are now before the Court. Dkt. 20, 24.

### III. LEGAL STANDARD

When reviewing an administrative decision under the APA, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). In such cases, the agency is the fact-finder, not the reviewing court; thus, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*.; *see City & Cnty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997). Therefore, judicial review in an APA case is based upon the "full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

### IV. DISCUSSION

#### A. The Court Has Jurisdiction Over Washington's Claims

Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003). Therefore, before a court "may reach the merits," it must first consider "whether [it] ha[s] subject matter jurisdiction over [plaintiff's] claims." *Price v. U.S. Gen. Servs. Admin.*, 894 F.2d 323, 324 (9th Cir. 1990). A challenge to subject matter jurisdiction may be raised at any point, *see* Fed. R. Civ. P. 12(h)(3), and the plaintiff bears the burden of proving its existence. *Leite v.*

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 8

*Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Defendants first argue that the Court lacks jurisdiction because Washington's claims fall within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). The Court disagrees.

The APA waives sovereign immunity for actions "seeking relief other than money damages" against a federal agency or officer alleged to have acted unlawfully. 5 U.S.C. § 702. Although the APA does not itself confer subject-matter jurisdiction, federal courts have jurisdiction over APA claims under 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 105 (1977); *South Delta Water Agency v. United States*, 767 F.2d 531, 539 (9th Cir. 1985). The APA further authorizes review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

The Tucker Act, in turn, grants the Court of Federal Claims jurisdiction over claims against the United States founded upon, among other things, "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Tucker Act may "impliedly forbid" an APA action seeking declaratory or injunctive relief where the APA claim is, in substance, a "disguised" breach-of-contract claim. *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023). But federal-grant litigation does not automatically fall within the Tucker Act merely because the challenged agency action concerns funding. The inquiry turns on both "the source of the rights upon which plaintiff bases its claims" and upon "the type of relief sought (or appropriate)." *Thakur v. Trump*, 163 F.4th 1198, 1204 (9th Cir. 2025) (citing *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir 1994)). "If the plaintiff's rights and remedies, as alleged, 'are *statutorily* or *constitutionally* based, then district[ ] courts have jurisdiction,' but if those rights and remedies 'are *contractually*

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 9

based then only the Court of Federal Claims does.'" *Id*. (quoting *United Aeronautical*, 80 F.4th at 1026) (emphasis in original).

This Court applied that framework in *King County v. Turner*, where plaintiffs challenged new funding conditions imposed on federal grants after conditional award. *Martin Luther King, Jr. County v. Turner*, 785 F. Supp. 3d 863 (W.D. Wash. 2025). There, this Court rejected the government's contention that the Tucker Act barred jurisdiction because the plaintiffs were not asking the Court to enforce grant agreements or order payment of grant funds. Instead, the plaintiffs challenged agency action imposing allegedly unlawful conditions and sought declaratory and injunctive relief barring the agencies from imposing or enforcing those conditions. The source of the asserted rights was statutory and constitutional, not contractual. That reasoning remains sound: "the mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have." *Id*. at 877 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)).

This case is not identical to *King County*, and the Court does not treat it as such. *King County* involved allegedly unlawful post-award funding conditions. This case involves Defendants' decision to pause, withhold, and terminate SSP itself. That distinction matters because several recent decisions have addressed the Tucker Act's application to grant-termination cases. But the distinction does not render *King County* irrelevant. Both situations require the Court to identify the source of the plaintiff's asserted rights and the nature of the relief sought.

Here, Washington's claims arise from statutes, appropriations law, the APA, and the Constitution—not from an alleged contractual promise contained in the SSP award. Washington

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 10

alleges that Congress appropriated funds for SSP "to support sheltering and related activities provided by non-Federal entities, in support of relieving overcrowding in [CBP] short-term holding facilities," and that Defendants unlawfully terminated the Program because they disagreed with that congressional policy judgment. Dkt. 28 at 14 (quoting Pub. L. No. 118-47, 138 Stat. at 598). Washington's claims therefore turn on whether Defendants' program-level action was arbitrary and capricious, contrary to law, in excess of statutory authority, *ultra vires*, and unconstitutional. Those questions do not require the Court to interpret the terms of Washington's SSP award, determine whether particular costs are allowable, calculate any amount due, or decide whether FEMA breached a grant agreement.

Defendants characterize Washington's claims differently. They argue that Washington's challenge is, at bottom, a claim to reinstate its terminated grant and compel FEMA to reimburse allowable costs under that grant. Defendants rely principally on the following recent cases: *Department of Education v. California*, 604 U.S. 650 (2025), *National Institutes of Health v. American Public Health Association*, 606 U.S. ___, 145 S. Ct. 2658 (2025), and *Thakur v. Trump*, 163 F.4th 1198 (9th Cir. 2025) to argue that this Court lacks jurisdiction over Washington's claims. Those cases are binding on this Court, but they do not require dismissal of Washington's claims.

In *California*, the Supreme Court stayed a district-court order that enjoined the government from terminating certain education-related grants and required the government to pay past-due grant obligations and continue paying obligations as they accrued. 604 U.S. at 650. The Supreme Court concluded that the government was likely to succeed in showing that the district court lacked jurisdiction because the APA's waiver of sovereign immunity does not extend to orders enforcing a contractual obligation to pay money. *Id*. at 651. *California* therefore stands for the proposition

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 11

that a district court may not use the APA to order the United States to pay past-due grant obligations or continue making payments under a grant where such relief functions as enforcement of a contractual payment obligation. It does not hold that every APA or constitutional challenge involving a federal grant must be brought in the Court of Federal Claims. To the contrary, the Court recognized that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds.'" *Id*. at 651 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)).

The Supreme Court's later decision in *NIH* confirms that line. There, the Supreme Court stayed, in part, an order vacating the government's termination of certain grants. The Supreme Court held that the APA did not provide district courts with jurisdiction to adjudicate claims "based on" federal grants "or to order relief designed to enforce" an "obligation to pay money" under those grants. 145 S. Ct. at 2659. The Court emphasized that the lower court's vacatur order required the government to release grant funds and that the government therefore faced irreparable harm if it was unable to recoup those funds from the plaintiffs if it ultimately prevailed. Thus, the jurisdictional concern in *NIH* was tied to the practical effect of the vacatur order: it operated to compel release of grant funds. The Court recognized, however, that not every related APA challenge belongs in the Court of Federal Claims. Justice Barrett's concurrence explained that "APA challenges to [agency] guidance belong in district court," even if challenges to the resulting grant terminations belong in the Court of Federal Claims. *Id*. at 2662 (Barrett, J., concurring). That distinction is significant here. Washington does not ask the Court to adjudicate the allowability of any particular reimbursement request or to enter a money judgment. It challenges Defendants'

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 12

program-level policy to terminate SSP, not merely an individualized payment or allowability determination under its award.

The Ninth Circuit's decision in *Thakur* is consistent with this distinction. In *Thakur*, the Ninth Circuit stayed an injunction to the extent it vacated grant-termination notices and reinstated terminated grants, concluding that the government had made a strong showing that such relief was "designed to enforce an[] obligation to pay money pursuant to [the] grants" at issue. 163 F.4th at 1204 (quoting *NIH*, 145 S. Ct. at 2658). But *Thakur* did not hold that district courts lack jurisdiction over all statutory or constitutional challenges to agency policies merely because the challenged policies affect grants. Rather, *Thakur* focused on the particular relief ordered—vacatur of termination notices and reinstatement of terminated grants. That distinction matters because Washington's claims are directed to the legality of Defendants' alleged SSP Termination Policy, not to the adjudication of any particular reimbursement claim.

The recent decision in *Washington v. United States Department of Education*, 161 F.4th 1136 (9th Cir. 2025), is closer to the jurisdictional principle that governs here. There, the Ninth Circuit denied a stay pending appeal and held that the Department of Education had not made a strong showing that the Tucker Act barred the states' APA challenge to the discontinuation of multi-year education grants. *Id*. at 1139–40. The Ninth Circuit distinguished *California* and *NIH*, stating that the plaintiffs in those cases "explicitly sought, and the district courts ordered, the immediate payment of past-due grant obligations and the continued payment of ongoing obligations based on midyear grant terminations," while the relief granted by the district court in the case before it did not "order payment of any funds" rather it "merely [froze] funds at issue until the [government] makes a revised continuation or discontinuation or wins the merits of its claims." *Id*. at 1140. Thus,

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 13

the Ninth Circuit's decision in *Washington v. United States Department of Education* confirms that *California* and *NIH* did not silently overrule the source-of-rights/type-of-relief framework applied in *King County* and *United Aeronautical*.

The decision most factually similar to this case is *City of Chicago v. United States Department of Homeland Security*, 815 F. Supp. 3d 727 (N.D. Ill. 2025), which also involved DHS's and FEMA's treatment of sheltering funds. There, the court drew a distinction between challenges to past grant terminations and challenges to a funding freeze and the defendants' termination of the Shelter and Services Program itself. The court held that claims challenging past termination of particular grants belonged in the Court of Federal Claims because any remedy would amount to retrospective payment relief. But it also held that claims challenging DHS's decision to freeze funds and terminate the sheltering program were equitable claims outside the Tucker Act because "[t]hose challenges, if successful, would not require the Court to reverse or vacate past grant terminations, or otherwise require the government to pay money past due." *Id*. at 747. Instead, the relief would simply reopen the opportunity to submit reimbursement requests and to the extent that submitting the reimbursement requests may ultimately result in the transfer of funds, that is "a mere by-product of [this court's primary function of reviewing the [government's] interpretation of federal law." *Id*. (quoting *Bowen*, 487 U.S. at 910). That distinction is persuasive. Like the plaintiffs in *City of Chicago*, Washington seeks review of agency action that operated at the program level and, as applied to Washington, foreclosed access to the reimbursement process. An order setting aside that action as applied to Washington would not require FEMA to approve any particular request, determine whether any cost is allowable, or pay a sum certain. It would leave those determinations to FEMA in the first instance.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 14

Defendants respond that this is merely a distinction without a difference because vacating the SSP Termination Policy would necessarily restore Washington's ability to seek reimbursement, and FEMA could ultimately pay allowable costs. But the possibility that lawful agency action may later result in payment does not transform Washington's present claims into claims for money damages. *Bowen*, 487 U.S. at 893. The relevant question is not whether Washington's success could have financial consequences. It plainly could. The question is whether Washington asks this Court to determine entitlement to money or to order Defendants to pay. It does not. Washington seeks to remove an allegedly unlawful agency barrier that prevents it from participating in a congressionally funded program and submitting reimbursement requests for agency review. FEMA would remain responsible for determining, in the ordinary course, whether any particular request is supported, allowable, and payable.

This limitation is important. The Court's jurisdiction does not extend to deciding whether Washington is entitled to payment on any particular reimbursement request. If FEMA were to deny a reimbursement request because specific costs were unsupported, outside the approved scope of work, or otherwise not allowable under the grant, a dispute over that denial may well belong in the Court of Federal Claims. Washington appears to acknowledge as much. But that hypothetical payment dispute is not the claim presently before the Court. The claim presently before the Court is that Defendants adopted and implemented a program-level policy that Washington contends is unlawful under the APA and the Constitution.

The Court therefore concludes that the Tucker Act does not deprive it of jurisdiction to resolve Washington's APA claims challenging the SSP Termination Policy. The source of Washington's asserted rights is federal law, not the SSP grant agreement, and the relief sought is

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 15

directed to the legality of agency action, not payment of money damages. To be clear, however, the Court does not hold that it may order FEMA to pay any particular reimbursement request, approve any future reimbursement request, or otherwise specifically perform payment obligations under Washington's SSP award. Any relief entered by this Court must be limited to the legality of the challenged agency action and must leave grant-specific reimbursement determinations to FEMA in the first instance.

For these reasons, Defendants' Tucker Act argument fails.

**B.      The SSP Termination Policy Is Contrary to Law and Arbitrary and Capricious**

Washington contends that Defendants' decision to terminate SSP was contrary to law, and arbitrary and capricious under the APA, 5 U.S.C. § 706(2)(A), (C). As to its contrary-to-law claim, Washington argues that Congress established SSP to enable non-federal entities to provide sheltering and related services to noncitizen migrants released from DHS custody. Washington contends that, by terminating SSP on the ground that providing such services is inconsistent with DHS's current priorities, Defendants impermissibly substituted their policy judgment for Congress's funding judgment. As to its arbitrary-and-capricious claim, Washington argues that Defendants failed to reasonably explain their decision, relied on shifting and unsupported rationales, failed to consider the statutory purpose of SSP, and failed to account for the serious reliance interests of SSP recipients and the communities they serve.

Defendants disagree. Although they do not dispute that the 2024 DHS Appropriations Act provided funding for sheltering and related activities associated with noncitizen migrants, they argue that the Act left FEMA discretion over how to use those funds, including whether to distribute them through grants and whether to fund any particular services to noncitizens. They further

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 16

contend that 2 C.F.R. § 200.340(a)(2) authorized FEMA to terminate the awards because they no longer effectuated DHS's current immigration-enforcement priorities. Defendants also argue that their explanation was sufficient because the agency reasonably concluded that funding services for noncitizen migrants was inconsistent with DHS's current enforcement priorities and could incentivize unlawful immigration.

The Court agrees with Washington.

### 1. Defendants acted contrary to law

Under the APA, a court may set aside an agency action that is "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(B), (C). Washington argues that Defendants' decision to terminate SSP because the program conflicted with current Executive Branch priorities must be set aside as contrary to law. That argument implicates a foundational separation-of-powers principle: once Congress appropriates funds for a specified purpose, the Executive may not withhold or cancel those funds simply because it disagrees with Congress's policy judgment. The Constitution "exclusively grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018) (citing U.S. Const. art. I, § 9, cl. 7). The Appropriations Clause serves the "fundamental and comprehensive purpose" of ensuring "that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 427–28 (1990)). "Aside from the power of veto, the President is without authority to thwart congressional will by canceling appropriations passed by Congress."

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 17

*San Francisco*, 897 F.3d at 1231. Likewise, an executive agency "literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). When an agency administers a statute, "[b]oth [its] power to act and how [it is] to act [are] authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). Thus, "[a]bsent congressional authorization, the Administration may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals." *San Francisco*, 897 F.3d at 1235.

The relevant statutory text here is not ambiguous. Congress appropriated funds "to support sheltering and related activities provided by non-Federal entities, in support of relieving overcrowding in short-term holding facilities of U.S. Customs and Border Protection." Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. C, tit. II, 138 Stat. 460, 598. FEMA's own Notice of Funding Opportunity reflected that statutory purpose, stating that the funds were made available, "[a]s directed by Congress," to enable "non-federal entities to off-set allowable costs incurred for services associated with noncitizen migrants recently encountered and released by DHS," and identifying the "primary purpose" of SSP as "reliev[ing] overcrowding in short-term holding facilities of [CBP]." Dkt. 18-2 FEMA_AR_00005.

Defendants terminated SSP because, in their view, providing support to noncitizen migrants no longer effectuated DHS's current enforcement priorities. *See* Dkt. 18-11 FEMA_AR_000185. But that rationale conflicts with the purpose for which Congress appropriated the funds. Congress chose to support sheltering and related activities by non-federal entities as a means of relieving overcrowding in CBP facilities. Defendants may disagree with that policy choice, but they may not invoke a change in Executive Branch priorities to nullify Congress's funding judgment.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 18

Nor does 2 C.F.R. § 200.340 give Defendants authority to substitute their policy preference for Congress's funding judgment. Defendants argue that § 200.340(a)(4) authorized FEMA to terminate the SSP awards because they no longer effectuated DHS's current immigration-enforcement priorities. But the regulation does not confer the freestanding authority Defendants claim. As this Court has previously stated, "a regulation cannot create statutory authority; only Congress can do that." *King County*, 785 F. Supp. 3d at 886. And the regulation itself recognizes that limitation: § 200.340(a)(4) permits termination based on changed program goals or agency priorities only "to the extent authorized by law." 2 C.F.R. § 200.340(a)(4). Thus, the regulation does not allow an agency to terminate awards whenever its priorities change; it permits termination on that basis only where such termination is otherwise authorized by law. That limitation is dispositive here. *See Pacito v. Trump*, 169 F.4th 895, 937 (9th Cir. 2026) (rejecting the government's reliance on 2 C.F.R. § 200.340 because the regulation authorizes termination only "to the extent authorized by law," and the challenged terminations prevented the government from fulfilling statutory obligations); *City of Chicago*, 815 F. Supp. 3d at 755 ("[S]ection 200.340 does not permit the agency to decline to follow a statute simply because its priorities have changed."); *Metro. Transp. Auth. v. Duffy*, 784 F. Supp. 3d 624, 670 (S.D.N.Y. 2025) ("Section 200.340 does not create a default ability by the federal government to terminate an award over the award recipient's objection, whenever an agency determines its priorities have changed."). Defendants' asserted agency priorities cannot override SSP's statutory purpose. The Court therefore concludes that Defendants acted contrary to law when they terminated SSP.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 19

### 2.   The termination of SSP was arbitrary and capricious

Defendants' decision to terminate SSP was also "arbitrary" and "capricious." 5 U.S.C. § 706(2)(A). Under the APA, a reviewing court must "hold unlawful and set aside agency action" that is "arbitrary, capricious[.]" *Id.* The scope of review is narrow, and the court may not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). But the agency must "examine the relevant data and articulate a satisfactory explanation for its action including 'a rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Agency action must be reasonable and "reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). And when an agency changes course, it must at least "display awareness that it *is* changing position" and provide good reasons for the new policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (emphasis in original). Where the prior policy engendered serious reliance interests, the agency must assess those interests and weigh them against competing policy concerns. *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 30–33 (2020).

The administrative record does not show that Defendants reasonably explained why the same sheltering and related services that Congress funded, and that FEMA previously identified as serving SSP's statutory purpose, suddenly ceased to effectuate the program's goals. Nor does the record show that Defendants considered whether terminating SSP would undermine Congress's stated objective of relieving overcrowding in CBP short-term holding facilities. Defendants instead relied on broad assertions that SSP funds supported noncitizen migrants and were inconsistent with current enforcement priorities. That explanation does not connect the facts found to the decision made; it simply restates Defendants' disagreement with the statutory purpose of the Program.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 20

The asserted law-enforcement rationale fares no better. In the March 11, 2025 letter, Defendants stated that they had "significant concerns that SSP funding is going to entities engaged in or facilitating" violations of immigration law. Dkt. 18-9 FEMA_AR_000178. Defendants did not identify any evidence supporting that assertion, did not identify any unlawful conduct by Washington, and did not provide Washington with a meaningful opportunity to respond before proceeding to terminate the Program. An agency may not rest significant adverse action on serious allegations of unlawful conduct without identifying a factual basis for those allegations. *See State Farm*, 463 U.S. at 43 (agency action is arbitrary and capricious where the agency "offered an explanation for its decision that runs counter to the evidence before the agency"). As the court in *City of Chicago* observed in reviewing the same SSP freeze and termination, "DHS/FEMA provided *no* factual support for the assertion that SSP funding was going to entities in violation of, or facilitated violation of, federal law." *City of Chicago*, 815 F. Supp. 3d at 762 (emphasis in original).

Even assuming Defendants had identified evidence that some SSP recipients were using funds unlawfully, the record still does not explain why terminating SSP in its entirety was a reasonable response. FEMA had existing mechanisms to review reimbursement requests, determine whether costs were allowable, and deny payment for costs that were unsupported, unallowable, or otherwise noncompliant. *See* 2 C.F.R. §§ 200.339, 200.345. Defendants do not explain why those ordinary grant-compliance tools were inadequate, why individualized review would not address any legitimate concern, or why alleged misconduct by unidentified recipients justified terminating the entire Program, including awards to recipients such as Washington against whom no evidence of unlawful conduct was identified. That failure to consider an obvious, less disruptive alternative

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 21

further supports the conclusion that the termination was arbitrary and capricious. Thus, Defendants did not merely fail to support their allegations; they also failed to explain why unsupported concerns about possible misuse of funds justified eliminating a congressionally funded program rather than using available compliance tools to address any actual, recipient-specific violations.

Defendants also failed to grapple with reliance interests. Washington applied for, received, and planned services around an SSP award designed to reimburse allowable sheltering and related expenses through the performance period. FEMA's termination decision upended those expectations and affected the State's ability to coordinate shelter, health, transportation, and related services for recently arrived noncitizen migrants. The record does not reflect that Defendants assessed those reliance interests, determined whether they were significant, or weighed them against any competing policy concerns.[2]

In sum, Defendants terminated SSP because the program served a purpose with which the current Administration disagrees. But Congress appropriated funds for that purpose. Section 200.340 does not authorize Defendants to substitute their policy preferences for that of Congress. Furthermore, the administrative record does not contain the reasoned explanation for Defendants' action as required by the APA. The Court therefore concludes that the SSP Termination Policy is contrary to the law and arbitrary and capricious under 5 U.S.C. § 706(2)(A) and (C). Because that

---

[2] Defendants also argue that Washington falls outside the zone of interests protected by the 2024 DHS Appropriations Act because the Act concerns only the relationship between Congress and DHS in the federal spending process. The Court disagrees. The zone-of-interests test is "not especially demanding" and forecloses suit only when the plaintiff's interests are "so marginally related to or inconsistent with the purposes implicit in the statute" that Congress cannot reasonably be understood to have authorized suit. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S.Ct. 2199, 2210 (2012)). Here, the Act appropriated funds "to support sheltering and related activities provided by non-Federal entities," Pub. L. No. 118-47, 138 Stat. at 598, and Washington is a non-federal entity that applied for and received SSP funds to provide those very services. Washington's interests are therefore not marginally related to the statute's purpose; they fall within it.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 22

conclusion provides a sufficient basis for relief, the Court need not separately decide whether the same conduct also independently violates the Spending Clause, the Separation of Powers Doctrine, or supports a standalone *ultra vires* claim.[3, 4]

### C.      Remedy

Having concluded that the SSP Termination Policy is contrary to law and arbitrary and capricious, the Court must determine the appropriate remedy. Washington requests that the Court declare the SSP Termination Policy unlawful, vacate Defendants' decision to terminate the program, and enjoin Defendants from terminating the program. Dkt. 15 ¶¶ 138–40. Defendants counter that any relief should be limited to remand to FEMA and, in any event, should not extend beyond Washington.

The Court finds that vacatur is appropriate in this case. Vacatur is the ordinary remedy when a court determines that final agency action violates the APA. *See All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018); *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). Remand without vacatur is not warranted here because Defendants' errors go to the core of the agency's authority and reasoning, and Defendants have not shown that setting aside the challenged action as applied to Washington will cause disruptive consequences

---

[3] This approach accords with the "fundamental and longstanding principle of judicial restraint" that courts should "avoid reaching constitutional questions in advance of the necessity of deciding them." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1123 (9th Cir. 2025) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)); *see also Washington v. Trump*, 441 F. Supp. 3d 1101, 1125 (W.D. Wash. 2020) (quoting *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009)) ("[A] court should not reach a constitutional question if there is some other ground upon which to dispose of the case.") (cleaned up).

[4] Defendants also argue that Washington has not satisfied the standard for preliminary injunctive relief. But Washington's motion is before the Court on cross-motions for summary judgment, and the Court has resolved the APA claims on the merits. The Court therefore is not applying the preliminary-injunction standard or entering interim relief to preserve the status quo pending further adjudication. Rather, the Court is setting aside unlawful final agency action under 5 U.S.C. § 706(2). To the extent the Court's order prevents Defendants from continuing to rely on the unlawful grounds identified above, that relief is coextensive with the APA set-aside and necessary to give effect to the Court's merits ruling. The Court does not order defendants to approve or pay any specific reimbursement request.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 23

sufficient to justify withholding the ordinary APA remedy. Therefore, the Court declares the SSP Termination Policy unlawful as applied to Washington and sets it aside, including Defendants' termination of Washington's SSP award pursuant to that policy. This relief is limited to Washington and does not require Defendants to approve or pay any specific reimbursement request. It simply removes the unlawful basis on which Defendants terminated Washington's award and restores Washington's ability to submit reimbursement requests under that award. FEMA remains responsible, in the first instance, for reviewing any reimbursement request; the Court decides only that Defendants may not rely on the unlawful grounds rejected in this Order to prevent Washington from submitting such requests or to terminate Washington's award.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Washington's motion for summary judgment as to its APA claims that the SSP Termination Policy is contrary to law and arbitrary and capricious and DENIES Defendants' cross-motion as to those claims. The Court SETS ASIDE, as applied to Washington, the SSP Termination Policy and Defendants' termination of Washington's SSP award pursuant to that policy. Washington may submit reimbursement requests under its SSP award, and Defendants may not refuse to consider those requests, deny reimbursement, or re-terminate Washington's award based on the grounds held unlawful in this Order. The Court does not order Defendants to approve or pay any specific reimbursement request.

DATED this 26th day of May 2026.

Barbara Jacobs Rothstein
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

- 24