

**STEVEN BANKS**
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**JOSHUA P. RUBIN**
Senior Counsel
Affirmative Litigation Division
Phone: 212-356-2269
Fax: 212-356-2038
email:jrubin@law.nyc.gov

July 22, 2026

<u>**VIA ECF**</u>

Hon. Jennifer H. Rearden, U.S.D.J.
United States District Court
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re:**   *City of New York v. Trump et al.,* **25-cv-1510**

Dear Judge Rearden,

I write on behalf of plaintiff the City of New York ("City") to seek leave to file a motion for summary judgment under this Court's Individual Rule 5.K.i. The City has good cause to file this motion because (i) Defendants' May 22, 2026 denial of our reimbursement request for roughly $80 million was arbitrary and capricious, an abuse of discretion, and contrary to law; and (ii) Defendants' February 11, 2025 reversal of their transfer of that amount to the City was contrary to law. Recent events make clear these matters are ripe for summary judgment. The proposed motion is timely under Fed. R. Civ. P. Rule 56(b).[1]

**Background**

As set forth in the Second Amended Complaint ("SAC") (ECF No. 50), on February 11, 2025, Defendants reversed an automated clearinghouse ("ACH") transaction to take back

---

[1] The Rule "allows a party to move for summary judgment at any time, even as early as the commencement of the action." Committee Notes on Rules – 2009 Amendment. Summary Judgment is commonly the means of resolving

roughly $80 million they had previously approved and paid to the City to reimburse expenditures pursuant to the Shelter and Services Program ("SSP") grants awarded to the New York City Office of Management and Budget ("OMB"). A week later, Defendants announced that they had recovered and were "temporarily withholding" this amount out of the professed concern that "SSP funding is going to entities engaged in or facilitating illegal activities," and that "entities receiving payment" under SSP "may be guilty of violating" various immigration laws under 8 U.S.C. § 1324 (inducing illegal entry, harboring, etc). ECF No. 9-20.   The SAC separately details many statements by administration officials that betray Defendants' general animus to the purposes of the program and towards the City, and their intent to deny payment of these funds.

In search of a post-hoc rationale for its unlawful reversal of the ACH transfer, DHS issued a far-reaching "Notice of Investigation and Demand for Records" ("Notice") to OMB on June 4, 2025 (provided herewith). The Notice again asserted unsupported concerns about violations of 8 U.S.C. § 1324, and  included 13 broad demands for documents, including all documents related to [OMB's] compliance with 8 U.S.C. § 1324 and to enforcing the Comstock Act (see Demand Nos. 1, 12).  The Notice gave OMB 30 days to respond.

After correspondence aimed at clarifying or narrowing the requests, the City retained outside counsel on OMB's behalf and commenced productions on a rolling basis. Despite the sprawling nature of their requests, DHS admonished that "the matter w[ould] not extend past July [2025]," before pushing that endpoint back a week and setting a final deadline of August 7.

OMB produced 7,204 documents and provided interrogatory responses across three document productions largely by August 7, save for a clean-up production on August 21, 2025 after a privilege review. It offered to meet with Defendants to review with them the materials provided and noted its readiness to cooperate and to supplement its document production and

---

claims brought under the Administrative Procedure Act, under which the "entire case on review is a question of

2

responses if needed (a copy of the City's August 21, 2025 letter provided herewith). Despite the professed urgency of DHS's demands, Defendants did not respond to or even contact the City at all about the investigation for the next nine months—until May 22, 2026.

As the Court may recall through prior correspondence, the court in *City of Chicago v. DHS*, 25-cv-5463 (N.D. IL), preliminarily enjoined the withholding of SSP reimbursement payments and the termination of SSP (*see* ECF Nos. 61 & 62), finding a likelihood of success on claims that these actions were arbitrary and capricious: "DHS/FEMA provided no factual support for the assertion that SSP funding was going to SSP entities in violation of, or that facilitated violation of, federal law." *Id.*, ECF No. 58 at 53-54. On May 8, 2026, the *Chicago* court ordered that DHS and FEMA complete processing the reimbursement requests of all SSP grantees (including non-party grantees) no later than May 22, 2026. *Id.*, ECF No. 101.

**May-June 2026 Correspondence Regarding the Investigation**

Defendants' silence ended when FEMA wrote to OMB on May 22, 2026 - the *Chicago* court's compliance deadline - and "denied Plaintiff's reimbursement requests" for the $80 million (provided herewith) based upon a "preliminary review." The denial does not appear to have resulted from a review of the City's responses provided in July-August 2025. Nonetheless, Defendants have admitted that the May 22 denial constitutes a final determination for the purpose of the Administrative Procedure Act ("APA") and accordingly have withdrawn their previously-asserted finality arguments as to the $80 million (ECF No. 63).

FEMA's May 22 letter states:

> Upon a preliminary review of the supporting documentation submitted, FEMA does not believe that the information provided is fully responsive to DHS's requests. Accordingly, the potential issues of noncompliance with the terms and conditions of your award identified in June [2025] remain unresolved, and your payment request is denied.

---

law." *E.g.*, *Zabaleta v. Nielsen*, 367 F.Supp.3d 208 (S.D.N.Y. 2019).

FEMA indicated that it would reconsider the OMB's request if OMB provides "a complete and full response" to a new set of document requests that focused not on 8 U.S.C. § 1324 or the Comstock Act but largely on whether "adequate security and safe conditions" were provided at facilities funded with the SSP awards and concerns about preventing "human trafficking."

The May 22, 2026 letter provides no reasoning supporting the denial of the $80 million or FEMA's conclusion, upon "preliminary review," that the information OMB had provided nine months earlier was not fully responsive to DHS's requests, or why any supposed shortcoming was reason to deny any—let alone all—of the $80 million. Nor did the letter acknowledge the OMB's good-faith efforts in August 2025 to review its responses with Defendants or to discuss supplementing them.

Making matters worse, in a June 23, 2026 email (provided herewith), FEMA revealed that its "preliminary review" was at best incomplete and possibly nonexistent. The email admitted that no representative of the federal government had ever reviewed the August 2025 interrogatory responses (which included, inter alia, information regarding security vendors responsive to both the 2025 and 2026 document requests). FEMA requested a new copy of the response because the "file which contains [OMB's] interrogatory answers was inaccessible when originally provided to DHS and remains so." It thus appears that no one at DHS or FEMA actually read those responses (which the City provided as a .pdf) or requested a new copy of the file, which would seem essential to Defendants' investigation. OMB promptly provided the new copy of the interrogatory responses to FEMA on June 24, 2026.

More broadly, the June 23, 2026 email noted that the entire production of 7,204 documents to DHS was only "recently transferred to FEMA for review," citing the fact that "both DHS and FEMA have navigated a number of operational challenges over the past year." It thus appears that FEMA may not have even possessed the City's production, let alone reviewed

4

it, when it denied reimbursement on May 22 on grounds that OMB's response was not "fully responsive" to DHS's document requests. As noted above, whatever deficiencies FEMA believes exist in the City's August 2025 production, they have not identified them.

The City submits that its claims regarding the $80 million present no disputed questions of fact and that now is the time for the parties to brief their merits. Seventeen months have passed since the federal government first removed those funds, and this action has been pending for nearly as long. Defendants' reversal of the reimbursement is ripe for summary judgment review because it violated the rules governing ACH transactions and because it was arbitrary and capricious and contrary to law under the laws and rules governing grant administration. The record is now equally clear that summary judgment is warranted invalidating Defendants' May 22, 2026 denial of OMB's reimbursement request because that act was arbitrary and capricious, as detailed above. Further, summary judgment is warranted invalidating Defendants' termination of SSP given that another court has already so held. *See* ECF No. 62 (citing and attaching *State of Washington v. U.S. Dep't of Homeland Security et al.*, 25-cv-1401 (BJR)) (decision of May 26, 2026)). The City recognizes that the Court may be near to deciding Defendants' motion to dismiss filed in July 2025. Regardless, the parties should proceed to briefing on summary judgment so that the merits are presented for resolution by the Court.

The City maintains that the public statements of government officials and documents exchanged by the parties as part of the challenged agency actions are the operative record and make clear that Defendants' actions were unlawful. The City therefore respectfully requests permission to move for summary judgment on the aforementioned claims. To the extent that defendants believe that additional materials beyond those described above are part of the administrative record, the City would respectfully request that the Court order them to identify those materials and expeditiously produce the certified administrative record.

We thank the Court for its consideration.

Respectfully submitted,

Joshua P. Rubin
Senior Counsel

cc:    via ECF